[No. C057920. Third Dist. Aug. 15, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE CRISLER, Defendant and Appellant.

1504

**COUNSEL**

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RAYE, J.**—Defendant Robert Lee Crisler was convicted of first degree murder and sentenced to life in prison without parole. Defendant's only contention on appeal is that the trial court abused its discretion in awarding direct victim restitution in the amount of $9,567.82 to the victim's parents for

lost wages, mileage, and parking fees incurred while attending the 15-day murder trial. Defendant claims that because the parents did not testify at trial or otherwise assist the prosecution, the trial court's award went beyond the language of the restitution statute as well as the intent of the Legislature in mandating direct victim restitution. As will be explained more fully below, defendant is incorrect. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2006, defendant was convicted of first degree murder in the death of 15-year-old Mario Vidal. The trial court ordered restitution to the victim's mother, father, and stepfather (parents) in an amount to be determined. On July 23, 2007, the probation department filed a report recommending restitution in the amount of $54,184.16.[1] On the same day, the trial court ordered defendant to either stipulate to the probation department's recommendation or request a hearing to dispute the amount. On August 22, 2007, defendant objected to the probation department's recommendation, arguing that Penal Code section 1202.4 does not authorize reimbursement for time spent attending trial because the parents did not testify or otherwise assist the prosecution.[2]

On October 25, 2007, a motion was filed seeking to amend the restitution order to provide a specific dollar amount. The motion was argued before the court on November 7, 2007. On December 11, 2007, the trial court ordered restitution in the amount of $39,543.12. Of this amount, $9,567.82 was awarded for lost wages, mileage, and parking expenses incurred by the parents while attending the murder trial.[3] As the court explained its rationale: "[T]he parents of a murder victim might be expected to attend court proceedings even though they are not witnesses. For the dates of trial, it appears that all parties would need to be away from work for an entire day to attend court. . . . The parties were able to provide some parking receipts showing that they used single-rate parking for each event. For this reason, the court has allowed parking and mileage expenses."

---

[1] The report recommended an award of $32,486.35 for the victim's mother for counseling and loss of wages for 70 weeks off of work caused by the emotional trauma of losing her son, and parking and mileage costs incurred while attending trial. The report recommended that the victim's father and stepfather be awarded $12,924.29 and $8,773.52, respectively, for loss of wages, counseling, parking, and mileage.

[2] All further statutory references are to the Penal Code.

[3] The restitution order awarded the victim's father $5.25 daily for parking, $16.55 daily for mileage, and $167.20 daily for lost wages, totaling $2,835.00. The victim's mother was awarded half of the daily expenses for parking and mileage ($429.41) and $86.96 daily for lost wages ($1,304.40), totaling $1,733.81. The stepfather was similarly awarded half of the daily expenses for parking and mileage ($429.41) and $304.64 daily for lost wages ($4,569.60), totaling $4,999.01.

Defendant filed a timely notice of appeal.

## DISCUSSION

Article I, section 28 of the California Constitution provides, in relevant part: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Cal. Const., art. I, § 28, subd. (b); see also *People v. Giordano* (2007) 42 Cal.4th 644, 655 [68 Cal.Rptr.3d 51, 170 P.3d 623] (*Giordano*) [victim restitution is a "constitutional mandate"].)

The constitutional mandate for restitution is implemented through section 1202.4. Subdivision (a)(1) of section 1202.4 provides: "It is the intent of the Legislature that a victim of crime who incurs *any economic loss* as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (Italics added.) Subdivision (f) of section 1202.4 provides, in relevant part: "[I]n *every case* in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . *The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record.* . . . [¶] . . . [¶] (3) To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to *fully reimburse* the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, *including, but not limited to*" 11 enumerated categories of expenses. (Italics added.)

We review the trial court's restitution order for abuse of discretion. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045 [29 Cal.Rptr.3d 120] (*Keichler*); *People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409 [132 Cal.Rptr.2d 903] ["We review a restitution order for an abuse of discretion and will not disturb the trial court's determination unless it is arbitrary, capricious and exceeds the bounds of reason."].)

■ As a preliminary matter, there appears to be a dispute as to whether the parents qualify as "victims" under the statutory scheme. This dispute is easily resolved. Subdivision (k) of section 1202.4 defines "victim" as including the "immediate surviving family of the actual victim." (§ 1202.4, subd. (k)(1).) This provision readily covers the mother and father. Subdivision (k) goes on to

define "victim" as including "[a]ny person who has sustained economic loss as the result of a crime and who . . . [¶] . . . [¶] . . . [a]t the time of the crime was living in the household of the victim." (§ 1202.4, subd. (k)(3)(B).) This provision readily covers the mother and stepfather. Consequently, each of the parents is a "victim" under the statutory scheme.

The essence of defendant's claim is that restitution is not authorized in this case because one of the enumerated categories, section 1202.4, subdivision (f)(3)(E), specifically provides for lost wages "due to time spent as a witness or in assisting the police or prosecution." Defendant argues that the trial court abused its discretion by awarding restitution to the parents for lost wages, mileage, and parking fees incurred while attending the 15-day murder trial because the parents did not testify at trial or otherwise assist the prosecution. We disagree.

██ As we explained in *Keichler*: "In examining the restitution statute, '[t]he intent of the voters is plain: every victim who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss.' [Citation.] As a result, 'the word "loss" must be construed broadly and liberally to uphold the voters' intent.' [Citation.] Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." (*Keichler, supra*, 129 Cal.App.4th at p. 1046.)

██ In *Giordano*, our Supreme Court held that "a surviving spouse may receive as direct restitution the amount of lost economic support incurred due to a criminal act that resulted in the death of his or her spouse" despite the fact that recovery for such loss was not specifically enumerated in subdivision (f) of section 1202.4. (*Giordano, supra*, 42 Cal.4th at p. 662.) There, the court explained that "when a defendant is convicted of a crime involving a victim who 'has suffered economic loss as a result of defendant's conduct' [citation], the court must require the defendant to pay full restitution directly to the victim or victims of the crime 'unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' [Citation.]" (*Id.* at pp. 651–652.) As the court explained, the list of categories of compensable loss in subdivision (f) is nonexclusive: "the order 'shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for *every determined economic loss* incurred as the result of the defendant's criminal conduct, *including, but not limited to*,' the 11 enumerated categories [set forth in the statute]." (*Giordano,* at p. 656, quoting § 1202.4, subd. (f)(3).) The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3); see *Giordano, supra*, 42 Cal.4th at p. 656.)

Here, the parents were themselves victims of defendant's criminal conduct. They suffered the trauma inherent in the murder of their son. They also suffered lost wages and other expenses related to their attendance at defendant's murder trial.

■ Defendant properly notes that subdivision (f)(3)(E) of section 1202.4 explicitly identifies as an item of reimbursable economic loss when the victim is a minor "wages or profits lost by the minor's . . . parents . . . due to time spent as a witness or in assisting the police or prosecution."

However, in view of the clear language that a victim is to be "fully reimburse[d] . . . for every determined economic loss" (§ 1202.4, subd. (f)(3)), the express mention of one category of loss (lost wages due to time spent as a witness or in assisting law enforcement) does not preclude reimbursement for other economic losses. Trial-related expenses need not fall within any of the enumerated categories to qualify for reimbursement. (*Giordano, supra,* 42 Cal.4th at p. 662 [holding that a surviving spouse may receive lost economic support as restitution despite the fact that such recovery is not specifically enumerated]; *Keichler, supra,* 129 Cal.App.4th at pp. 1046–1047 [affirming restitution award of expenses arising out of a traditional Hmong healing ceremony because the healing ceremony was the direct result of the defendant's criminal conduct]; *People v. Mearns* (2002) 97 Cal.App.4th 493, 503 [118 Cal.Rptr.2d 511] [affirming restitution award of relocation expenses incurred by a rape victim because the trauma of the rape was such that the victim "virtually had to move and this was an 'economic loss' resulting from defendant's conduct" regardless of whether such moving expenses were specifically covered by § 1202.4, subd. (f)(3)(I); *People v. Phelps* (1996) 41 Cal.App.4th 946, 950–952 [48 Cal.Rptr.2d 855] [affirming restitution award of future medical expenses because the victim's injuries were the direct result of the defendant's criminal conduct regardless of the fact that such expenses were not specifically enumerated in the statute].)

■ Here, the parents took time away from work and incurred parking and mileage expenses as a result of attending the murder trial of the man who killed their son. These expenses readily qualify as "economic loss incurred as the result of the defendant's criminal conduct" since they would not have been incurred had defendant not murdered their son. (§ 1202.4, subd. (f)(3).) It is entirely reasonable that the parents of a murder victim will attend the murder trial in an attempt to gain some measure of closure and a sense that justice has been done. This is not the sort of situation where an award of expenses will "impermissibly 'allow [the] victim to be opportunistic.' [Citation.]" (*Keichler, supra,* 129 Cal.App.4th at p. 1047.) Consequently, regardless of whether section 1202.4, subdivision (f)(3)(E) specifically covers the parents' request for lost wages, parking fees, and mileage expenses, the trial court did not abuse its discretion in awarding restitution for those expenses.

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 2008, S166651.