[No. E048899. Fourth Dist., Div. Two. Apr. 28, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARLES PATRICK WILLIAMS, Defendant and Respondent.

144

COUNSEL

Michael A. Ramos, District Attorney, Grover D. Merritt, Lead Deputy District Attorney, and Paul W. Feldman, Deputy District Attorney, for Plaintiff and Appellant.

Law Offices of Michael A. Scafiddi, Michael A. Scafiddi and Sarah E. Powell for Defendant and Respondent.

OPINION

**RAMIREZ, P. J.**—While defendant Charles Patrick Williams was the general manager of Valley of Enchantment Mutual Water Company (VOE), he embezzled more than $50,000 from his employer and did not pay the company's payroll taxes between 1999 and 2006. As a consequence, VOE incurred attorney fees, fees for the internal audit by a certified public accounting (CPA) firm, as well as penalties and interest assessed by the Internal Revenue Service (IRS) for unpaid payroll taxes. At a contested hearing, the People sought a restitution order in the amount of $212,975.61, for all losses, less any amounts previously paid by defendant. The trial court denied restitution for the IRS penalties assessed against VOE and the People appealed. We reverse.

## BACKGROUND

Defendant was employed as the general manager of VOE from December 1999 through December 2006. In the fall of 2005, the office manager,

Rose A., noticed problems with the books after defendant started delegating billing responsibility to her. She consulted the company's QuickBooks records and noticed discrepancies; she also noticed cash losses from the cash register. She learned that when defendant received a payment from a customer, he would credit the customer's account for the payment but would not enter the payment into the daily receipts. He also changed the daily deposits by altering the deposit slip to take out cash. He also had the board president sign blank checks, and later made them out to himself, although he would make an entry in QuickBooks showing the checks were made out to another company.

In November 2006, Rose found numerous suspicious checks and discrepancies and consulted field supervisor Brian S. about the irregularities. Brian informed her that in the fall of 2005 he had a problem with his retirement account when he discovered that VOE had not made any contributions since 2001. Brian confronted defendant about the problem and defendant informed Brian that the person who handled the retirement account was misappropriating funds. After Brian and defendant calculated the amount that should have been contributed to the retirement account from previous years, the contribution was made.

Also in 2006, Brian was audited by the IRS and was informed that the payroll taxes on his earnings had not been paid. Defendant attributed the problem to Brian's tax preparer, so Brian asked his tax preparer about it. The tax preparer learned that the company had not paid the taxes, but cleared up Brian's liability for the unpaid taxes. However, the IRS then went after VOE for the back taxes.

The VOE board placed defendant on administrative leave and met with its attorney. Defendant resigned in November 2006. An investigation was performed by an independent business consultant and CPA firm. In the course of the investigation, defendant admitted embezzling funds from VOE in a letter signed on March 23, 2007. In that letter defendant promised to pay (1) $53,363 for the VOE checks he wrote to himself; (2) $18,000 for cash stolen; (3) $5,678.03 for payments on his American Express account made by VOE; (4) all investigative and attorney fees relating to the investigation; and (5) all penalties and interest that have accrued due to his failure to pay the VOE payroll taxes from December 1999 to September 2006. He also signed a settlement agreement and general release.

On July 3, 2007, a felony complaint was filed alleging one count of grand theft by embezzlement. (Pen. Code,[1] § 487, subd. (a).) It was further alleged

---

[1] All statutory references are to the Penal Code, unless otherwise indicated.

that in the commission of that offense, he took property of a value in excess of $50,000. (§ 12022.6, subd. (a).) On June 17, 2008, defendant pled guilty to count 1 and admitted the enhancement. The change of plea included a stipulated sentence of four years, with execution of sentence suspended upon a grant of probation, and provision for a restitution hearing.

The restitution hearing took place on June 29, 2009. After considering the pleadings submitted by the People and defendant, the court declined to order payment of any penalties as part of the restitution order. The People appealed from the restitution order.

## DISCUSSION

On appeal, the People contend that (1) restitution is a constitutional and statutory right for victims of crime, (2) a victim's right to restitution should be construed in his or her favor, and (3) the lower court erred in relying on the holding of *People v. Boudames* (2006) 146 Cal.App.4th 45 [52 Cal.Rptr.3d 629]. Phrased another way, the issue is whether the trial court erred in refusing to order restitution for IRS penalties incurred by VOE as a result of defendant's embezzlement of funds that should have been paid to the IRS for payroll taxes. We agree.

■ In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims. (§ 1202.4, subd. (f).) The restitution order must be sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct, including, but not limited to, among other things, full or partial payment for the value of stolen or damaged property (§ 1202.4, subd. (f)(3)(A)), and actual and reasonable attorney fees and other costs of collection accrued by a private entity on behalf of a victim (§ 1202.4, subd. (f)(3)(H)). Section 1202.4, subdivision (k) permits restitution to a business or governmental entity only when it is a direct victim of crime. (§ 1202.4, subd. (k); *People v. Martinez* (2005) 36 Cal.4th 384, 393 [30 Cal.Rptr.3d 779, 115 P.3d 62].)

Ordinarily, the standard of review of a restitution order is abuse of discretion. (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1231 [99 Cal.Rptr.3d 555].) However, when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal. (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016 [67 Cal.Rptr.3d 734], citing *In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1586 [33 Cal.Rptr.3d 103].) The question we must address is whether the assessment of penalties by the IRS against VOE for payroll taxes that were unpaid due to defendant's conduct constitutes an "economic loss" for which defendant is liable to make restitution.

■ We begin by noting that the California Constitution gives trial courts broad power to impose restitution on offenders, and that "all persons who suffer losses" due to crime have the right to restitution. (Cal. Const., art. I, § 28, subd. (b)(13)(A); see *People v. Saint-Amans* (2005) 131 Cal.App.4th 1076, 1084 [32 Cal.Rptr.3d 518].) A victim's restitution right is to be broadly and liberally construed. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132 [123 Cal.Rptr.2d 316].)

The term "economic losses" is also accorded an expansive interpretation. (*In re Johnny M., supra*, 100 Cal.App.4th at p. 1133.) The term is not limited to out-of-pocket losses. (*Ibid.*) The term includes profits lost due to time the victim spent as a witness (§ 1202.4, subd. (f)(3)(E); *People v. Nguyen* (1994) 23 Cal.App.4th 32, 44 [28 Cal.Rptr.2d 140]), payment of interest as compensation for the loss of use of embezzled funds (*People v. Whisenand* (1995) 37 Cal.App.4th 1383, 1390 [44 Cal.Rptr.2d 501]), increased value of embezzled mutual fund shares (*People v. Tucker* (1995) 37 Cal.App.4th 1, 5 [44 Cal.Rptr.2d 1]), the cost of a Hmong healing ceremony (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046 [29 Cal.Rptr.3d 120]), as well as the reasonable value of employee work product lost as a result of the criminal conduct of another (*In re Johnny M., supra*, 100 Cal.App.4th at p. 1134).

■ The only limitation the Legislature placed on victim restitution is that the loss must be an " ' "economic loss" ' " incurred as a result of the defendant's criminal conduct. (*People v. Moore, supra*, 177 Cal.App.4th at p. 1232, quoting *People v. Crisler* (2008) 165 Cal.App.4th 1503, 1508 [81 Cal.Rptr.3d 887].) The Legislature's use of the language *"including, but not limited to,"* prior to listing the 11 categories included in section 1202.4, subdivision (f) (italics added), strongly indicates that the categories listed in the statute were not intended to be exclusive. (See *People v. Giordano* (2007) 42 Cal.4th 644, 656 [68 Cal.Rptr.3d 51, 170 P.3d 623].) A trial court may therefore compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if it is not specifically enumerated in the statute. (*People v. Keichler, supra*, 129 Cal.App.4th at p. 1046.)

At the restitution hearing, defense counsel cited and the trial court relied on the holding of *People v. Boudames, supra*, 146 Cal.App.4th 45, for the proposition that statutory penalties under the Revenue and Taxation Code should not have been included in the victim restitution order. In *Boudames*, the defendant was the president of a retail computer store who was charged with failure to pay sales taxes (Rev. & Tax. Code, § 7153.5) and bribery. The victim, California's State Board of Equalization, prepared a "victim's statement" for the presentence report, claiming restitution in the amount of $173,821.40 for the criminal audit period covering the taxes, as well as

interest and penalties to date. (146 Cal.App.4th at p. 49.) The court ordered victim restitution in that amount, in addition to $185,102.50 in investigative costs, and $1,250,375.64 in taxes, interest and penalties to date for the civil audit period. (*Ibid.*)

On appeal, the reviewing court concluded that the tax board could not seek restitution for interest and statutory penalties (Rev. & Tax. Code, § 6591) because " '[p]enalties' are not included among the specified enumerated economic losses." (*People v. Boudames, supra*, 146 Cal.App.4th at p. 51.) In that case, the First District Court of Appeal relied on the fact that "penalty assessment[s]" were provided for in another part of the statute (§ 1202.4, subd. (a)(2)) as support for its conclusion that the provisions for payment of restitution directly to a victim "readily manifests a legislative intent to segregate and distinguish a 'penalty assessment' from 'victim restitution.' " (146 Cal.App.4th at p. 51.)

We disagree. The penalties involved in this case are not "penalty assessments" imposed by a county treasurer as part of a fine. (§ 1464; see also Gov. Code, § 76000.) More significantly, the statuses of the parties in *Boudames* are radically different from the facts of this case, making the rationale of that case inapposite to our analysis. In *Boudames*, the victim was the tax board, which sought to *impose* penalties and interest on the defendant for nonpayment of sales taxes. There is no indication in the opinion that the tax board had incurred an economic loss in the amount claimed as a penalty.[2] The penalties and interest claimed in *Boudames* were for statutory amounts the State Board of Equalization is authorized to assess against persons or entities that do not pay their sales taxes (Rev. & Tax. Code, § 6591), not for losses due to penalties incurred by reason of a defendant's criminal conduct. In other words, the penalties in that case were noneconomic losses. Noneconomic losses are not recoverable. (*Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 445 [96 Cal.Rptr.3d 54].)

That is not true here. VOE is not a tax board authorized to charge for penalties and interest for nonpayment of payroll taxes. Instead, VOE was charged—and was forced to pay—monetary penalties due to defendant's criminal conduct of embezzling the money that should have been paid to the IRS. In other words, the penalties for which restitution was sought in the present case constituted an economic loss attributed directly to defendant's criminal conduct, within the meaning of section 1202.4, subdivision (f).

---

[2] We can perceive of situations in which a governmental agency which does not receive its share of taxes might be able to prove economic losses by virtue of its duty to expend funds, time, and services on public obligations despite nonreceipt of sales tax revenue. However, it appears the State Board of Equalization did not present any such evidence to justify the claim for penalties and interest in *People v. Boudames, supra*, 146 Cal.App.4th 45.

Consequently, the refusal to order restitution for the IRS penalties deprived VOE of its constitutional right to receive restitution directly from defendant for losses it suffered. (Cal. Const., art. I, § 28, subd. (b).) This was error, requiring remand to conduct a new restitution hearing to determine the amount of restitution.

## DISPOSITION

The restitution order is reversed. The case is remanded to the superior court to conduct a new restitution hearing to determine the amount of restitution. In all other respects, the judgment is affirmed.

McKinster, J., and Richli, J., concurred.

A petition for a rehearing was denied May 26, 2010, and respondent's petition for review by the Supreme Court was denied August 18, 2010, S183190. Corrigan, J., was of the opinion that the petition should be granted.