Filed 3/5/14  P. v. Arias CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038888 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC952349) |
| v. | |
| MARIO MARTINEZ ARIAS, | |
| Defendant and Appellant. | |

In this appeal Mario Arias (appellant) challenges a victim restitution order in the amount of $5,580 that was entered on August 10, 2012, following a formal restitution hearing.  After two trials, appellant was convicted of vehicle theft (Veh. Code, § 10851, subd. (a), count one), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), count two), driving a vehicle in the direction opposite to that of lawful traffic flow while fleeing a pursuing peace officer's motor vehicle (Veh. Code, § 2800.4, count three) and reckless driving while fleeing a pursuing peace officer's motor vehicle (Veh. Code, § 2800.2, subd. (a), count four).

This is appellant's second appeal in this case.  In H038532, appellant appealed his convictions.  On this court's own motion we have taken judicial notice of the record in that case.  In his first trial, the jury found appellant guilty of counts one, three and four, but hung 11-1 for guilty on the assault with a deadly weapon charge (count two).

Accordingly, the court declared a mistrial as to that count. At the retrial on the assault with a deadly weapon charge, the jury found appellant guilty.

Subsequently, the court sentenced appellant to state prison for 14 years four months—eight years on count two (assault with a deadly weapon—the upper term of four years doubled because of appellant's prior strike conviction), a consecutive 16 month term for count one (the vehicle theft), a concurrent upper term of six years for count three (driving the wrong direction while fleeing from police), a concurrent upper term of six years for count four (reckless driving while fleeing a police officer) and a consecutive five year term for the prior conviction. The court imposed a victim restitution order in the amount of $6,207.20. However, appellant objected to the amount and requested a formal restitution hearing.

At the formal restitution hearing, the victim of the vehicle theft, John Van, testified about the losses he incurred as the result of the theft of his 1997 Honda Accord.[1] Mr. Van said that before the Honda was damaged in a crash, it was in excellent mechanical condition, was not in need of body work, and had no damage to the interior. Every year his mechanic examined the car; and if repairs were needed he had work done in order to keep the car in excellent condition. Further, he stated that the car had the oil changed every three months and although there were a few scratches, there were no dents. There was no rust on the car, no fluid leaks in the engine compartment and all the upholstery was intact and in excellent condition. The car had never had a "paint job." Moreover, all the tires matched and the car had periodic smog inspections. Based on the condition of the car and information he got from a friend he valued the car at $4,000.[2] The car had been driven over 90,000 miles. Mr. Van estimated that it was somewhere between 97,000 and 98,000 miles. In addition to the losses incurred related to the Honda,

---

[1]     The Honda was involved in a crash with a CHP patrol vehicle after a high speed pursuit.

[2]     Mr. Van said that a friend had offered to buy the Honda for $4,000.

Mr. Van estimated that he had missed 25 to 30 hours of work to testify as a witness in the case. His English-speaking son took time off from work for 12 hours to get him to court and negotiate about the car.[3] His son personally missed additional hours of work to deal with the destroyed Honda; and there were costs associated with recovering the Honda from the tow yard. Mr. Van testified to the value of shoes, four chef's jackets, CDs, a sound system, and a jade charm that were missing from the Honda when he recovered it.

Defense counsel moved into evidence two exhibits showing the Kelly Blue Book value of a 1997 Honda Accord with mileage in the 90,000 to 100,000 range. Cars in "Excellent" condition ranged from $4,010 to $4,235. Cars in "Very Good" condition ranged from $3,760 to $3,985.

In calculating the amount of restitution the court totaled the claim as follows: 1997 Honda Accord—$4,000, stereo and CDs—$310, tow yard costs— $492.50, Jade ornament—$50, two pairs of shoes—$160, chef's coats—$100, missed work-Mr. Van—$428.40, missed work-Mr. Van's son—$40 for a total of $5,580.90. The court noted that it was reducing the amount sought for the CDs by $90.00 because the court thought the fair market value of the CDs was $10 each rather than the $25 that appellant claimed.

Based on the Kelly Blue Book values, defense counsel argued that $4,000 was too much for the Honda and "perhaps there should be a slight adjustment upwards from the 3,760 [the value of a Honda with 100,000 miles in 'Very Good' condition], but I don't think we get to $4,000."

Appellant filed a timely notice of appeal from the restitution hearing.

*Discussion*

Appellant contends that the trial court abused its discretion by failing to utilize the blue book value of the Honda in setting the amount of restitution. Respectfully, we disagree.

---

[3] We note that in both trials Mr. Van testified and was assisted by a Cantonese speaking interpreter.

The trial court is required to award restitution to a victim who has suffered economic loss as a result of the defendant's conduct. (Pen. Code, § 1202.4, subd. (f).) The restitution order shall be "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (Pen. Code, § 1202.4, subd. (f)(3).) The restitution amount should be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f).) To comport with basic due process, a defendant must be given notice and the opportunity to be heard. (*Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1547.) Consistent with this dictate, the victim restitution statutory scheme provides that the defendant has the right to a restitution hearing "to dispute the determination of the amount of restitution." (Pen. Code, § 1202.4, subd. (f)(1).) The statute contemplates that the restitution amount will be determined at sentencing, unless the amount cannot be ascertained at that time. (Pen. Code, § 1202.4, subd. (f); see *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.) The defendant's right to notice and a hearing is protected if the amount claimed by the victim is set forth in the probation report, and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing. (*People v. Cain* (2000) 82 Cal.App.4th 81, 86; see *People v. Gonzalez* (2003) 31 Cal.4th 745, 754–755.)

Case law indicates that losses for purposes of victim restitution are not limited to those enumerated in Penal Code section 1202.4 and must be construed broadly and liberally to compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior. (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1232 [victim's lost wages]; *People v. Crisler* (2008) 165 Cal.App.4th 1503, 1508 [expenses incurred by murder victim's parents in attending trial.].)

"A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. [Citation.] No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*People*

4

*v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).)  The trial court may consider almost any kind of information in calculating restitution.  (*People v. Phu* (2009) 179 Cal.App.4th 280, 283–284.)  " 'Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.  [Citation.]' [Citation.]"  (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)  " 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469 (*Baker*); see also *Gemelli, supra,* 161 Cal.App.4th at p. 1542.)  In reviewing the evidence, we do not reweigh or reinterpret it; we determine only whether there is sufficient evidence to support the inference drawn by the trier of fact.  (*Baker, supra,* 126 Cal.App.4th at p. 469.)

In essence, appellant argues that once he produced the Kelly Blue Book value for the Honda, which was $3,760, it was not rational for the court to award the speculative value that Mr. Van placed on the vehicle, which was based on what a coworker had offered him to buy the Honda.

Appellant's argument is based on his assumption that the car should have been categorized as in "Very Good" condition rather than "Excellent" condition.  The evidence established that the car's condition was somewhere between "Very Good" and "Excellent."  As noted, Mr. Van testified that the car was in excellent mechanical condition, was not in need of body work, and had no damage to the interior.  Every year his mechanic examined the car; and if repairs were needed he had work done in order to keep the car in excellent condition.  Further, he stated that the car had the oil changed every three months and although there were a few scratches, there were no dents.  There was no rust on the car, no fluid leaks in the engine compartment and all the upholstery was intact and in excellent condition.  The car had never had a "paint job."  Moreover, all the tires matched and the car had periodic smog inspections.  Appellant's own evidence established that a car that "is in excellent mechanical condition"; that "has never had paint

5

or bodywork and has an interior and body free of wear and visible defects"; that "is rust free"; that has a "clean engine compartment . . . free of fluid leaks"; and will pass "smog inspection[s]" is a car that is in "Excellent" condition.[4]  Further, appellant's evidence established that cars in "Excellent" condition ranged from $4,010 to $4,235.  Cars in "Very Good" condition ranged from $3,760 to $3,985.  In short, the evidence established that a 1997 Honda Accord with somewhere less than 100,000 miles and in the condition that Mr. Van testified the Honda was in, had a value of anywhere between $3,760 and $4,235.  We cannot say that it was arbitrary or capricious to set the value at $4,000.  Since there is a rational and factual basis for the amount of restitution ordered for the Honda, we must affirm the restitution order.

---

[4]    Since Mr. Van testified that there were some scratches on the Honda, the only criteria for a car in "Excellent" condition that the Honda did not meet is "looks new," which is why the evidence shows that the Honda fell between "Excellent" and "Very Good."

*Disposition*

The trial court's restitution order that was entered on August 10, 2012, is affirmed.

_____

ELIA, Acting P. J.

WE CONCUR:

_____

MIHARA, J.

_____

GROVER, J.