Filed 4/22/14  P. v. Voroshuck CA

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039524 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F21541) |
| v. | |
| ANTHONY MICHAEL VOROSHUCK, | |
| Defendant and Appellant. | |

In this appeal, Anthony Voroshuck (appellant) challenges a victim restitution order in the amount of $6,500 that was entered on April 9, 2013, following a formal restitution hearing.  Appellant filed a timely notice of appeal from the restitution hearing.

*Background*

On July 30, 2012, appellant pleaded no contest to one count of arson (Pen. Code, § 451, subd. (d).)[1]  Subsequently, the court suspended imposition of sentence and placed appellant on formal probation for three years on various terms and condition.  The court ordered that appellant pay victim restitution to three victims, none of which appellant

---

[1]     According to the probation officer's report, appellant set fire to a car owned by a Mr. Sickler, who at the time of the arson incident was having an affair with appellant's wife.  Not only was Mr. Sickler's car damaged, but three other vehicles and a motorcycle, as well as a wood fence and carport, were damaged.

challenges here. However, the court reserved jurisdiction with respect to restitution to Mr. Sickler in the event that appellant challenged the amount being sought.

The parties returned to court on January 15, 2013. The purpose of the hearing was to determine if an agreement on the amount of restitution that appellant owed to Mr. Sickler had been reached. The prosecutor presented the court with documentation to support a claim of $3,795 in restitution for Mr. Sickler's damaged Mercedes and $500 for equipment that was in the car when the car was damaged, for a total of $4,295. Defense counsel told the court that appellant had bought Mr. Sickler a $5,000 Toyota Camry a month after the arson event, and therefore, his client disputed the amount of restitution owed for the Mercedes. Ultimately, the court ordered that appellant owed $4,295 in restitution for the Mercedes and equipment that was in the car, but set the matter for a hearing to determine whether Mr. Sickler agreed that he had received satisfaction of that restitution amount.

At the next court hearing the prosecution told the court that Mr. Sickler disputed that appellant had bought him a car. Accordingly, the court set a restitution hearing to determine the amount of restitution to be paid to Mr. Sickler. At the restitution hearing, the prosecution asked the court if it could submit several affidavits in support of the restitution amount; the court allowed the prosecutor to proceed with affidavits rather than present live witnesses. Defense counsel submitted a photocopy of a check made payable to one Irene Davis in the amount of $750, plus a cashier's check also made payable to Irene Davis.[2] A notation written on the photocopy of the back of the cashier's check reads "Sold the Toyota Camry to (1999) Anthony Voroshuck for 5000.00 car in good condition. The car paid in full." A second notation reads, "I signed the pink slip to Mr.

---

[2]    On March 11, 2013, we granted appellant's motion to augment the record with copies of the exhibits that were admitted into evidence during the restitution hearing. The cashier's check was made out to Irene Davis in the amount of $2,900.

Sickler (Keone) in July 2011." Ms. Davis's signature appears beside the notation.[3] The check in the amount of $750, check number 1042, was drawn on the account of Lora Voroshuck, appellant's wife, and is dated July 9, 2011. A notation in the memo line indicates that the check was for "CAR[.]" The court continued the matter so that the prosecution could submit affidavits in support of the restitution amount owed to Mr. Sickler.

Subsequently, at the continued restitution hearing, the prosecutor took the position that appellant owed Mr. Sickler approximately $3,560 for the damaged Mercedes, $4,030 for Mr. Sickler's damaged motorcycle and $500 for the equipment in the Mercedes less $1,000 that appellant had already paid to Mr. Sickler. Defense counsel agreed that the amount of restitution owed was in the region of $7,500, but asserted that $7,500 had been paid because Mr. Sickler had received $1,000 in cash and a $5,000 Toyota.[4]

The prosecutor agreed that $7,500 was the "baseline" less the $1,000 already paid by appellant. The court noted that it had Irene Davis's declaration in which she stated that she received $2,900 from appellant for the 1999 Toyota Camry and that her daughter Lora had given her additional money.[5] The court went on to say that assuming that was true, appellant should get credit for the $2,900.

The court went on to say that it had a declaration from Mr. Sickler in which he said he purchased the Camry, appellant was not present, and that he had no knowledge of what the $2,900 cashier's check was for. Further, a declaration from Lora Voroshuck

---

[3] Ms. Davis is appellant's mother-in-law.

[4] We note for the record that $1,000 plus $5,000 equals $6,000. We are not sure how defense counsel makes it into $7,500. However, subsequently, defense counsel asserted that $6,000 "in value" had been transferred to Mr. Sickler.

[5] Ms. Davis's declaration states that appellant had given her a cashier's check for $2,900 and that the money was "consideration for a 1999 Toyota Camry"; that her daughter had given her a check for $750 and an additional $1,550 in cash; at the time her daughter gave her the money her daughter was still married to appellant; and she transferred title of the Camry to Mr. Sickler.

3

indicated that she had given her mother $750 as a down payment for the Camry and thereafter every month she paid $250 for a total of $4,750 for the car.[6] The court noted that it had a factual dispute and based on what the court was seeing without more, "Ms. Davis got paid $8,000 for this car or close to it."

In essence, the prosecutor argued that Ms. Davis's declaration was not credible and that appellant did not pay $2,900 toward the purchase of the Camry. Specifically, the prosecutor pointed out that appellant "wants you to believe . . . that during the time where he just commits an arson and blows up the car that belongs to the man who's sleeping with his wife, somehow he has the foresight to then go and pay $2,900 to Ms. Davis, Miss Voroshuck's mother, his mother-in-law, the same woman who, according to Mr. Voroshuck's own statement to police, disclosed to him that his wife was having an affair. [¶] According to this timeline, he goes in . . . anticipation of the restitution issue or because he felt bad while he's, you know, put in a psychiatric hospital to pay $2,900 to buy this man a new car. It's unbelievable. . . . [¶] Whatever his relationship is with Ms. Davis, she's over 80 years old, we're not suggesting that she's doing something out of some sort of ill motive. She may be confused as to what's going on. But there's nothing in the declaration that you have that suggests from Ms. Davis, number one, when the car was actually transferred to Mr. Voroshuck. I actually happen to have the pink slip on the car that shows when it was transferred along with the insurance paperwork from Mr. Sickler that it happened the very next day after the arson."

Defense counsel argued that the car was purchased by the "community of Laura [sic] and Mr. Voroshuck. Right? Mr. Sickler has a $5,000 Toyota Camry now. We have documentation of his ownership. If there's some beef that it wasn't community property at the time, that it was Miss Voroshuck's, her private bank account that money came

---

[6]     Ms. Voroshuck declared that her mother forgave the last $250 of the debt; and the cashier's check for $2,900 was given to her mother by appellant for a debt that he owed her mother "from Controlline Electric Inc. Not the Toyota Camry."

4

from. That's a matter to be resolved in family court." The court responded that there was a "presumption they're separate and apart."

Ultimately, the court found that it had "no reason to disbelieve" Ms. Voroshuck's declaration; and her declaration coupled with Ms. Davis's declaration established that Ms. Voroshuck made payments to Ms. Davis. The court went on to say that the $2,900 was "somehow paid . . . [f]or Mr. Voroshuck's benefit to get some cooperation of a witness. Timing of this is way to[o] suspicious." The court concluded that "the $2,900 paid by Mr. Voroshuck to Ms. Davis did not benefit Mr. Sickler. [¶] So the amount of restitution owing to Mr. Sickler after the credit of $1,000 previously paid by Mr. Voroshuck is $6,500. [¶] I find that the $2,900 paid by Mr. Voroshuck to Irene Davis did not result in benefit to Mr. Sickler."

*Discussion*

In essence, appellant contends that his restitution obligation should be offset by the amount his wife paid out of community property funds for the Toyota Camry.

The trial court is required to award restitution to a victim who has suffered economic loss as a result of the defendant's conduct. (Pen. Code, § 1202.4, subd. (f).) The restitution order shall be "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (Pen. Code, § 1202.4, subd. (f)(3).) The restitution amount should be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f).) To comport with basic due process, a defendant must be given notice and the opportunity to be heard. (*Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1547.) Consistent with this dictate, the victim restitution statutory scheme provides that the defendant has the right to a restitution hearing "to dispute the determination of the amount of restitution." (Pen. Code, § 1202.4, subd. (f)(1).) The statute contemplates that the restitution amount will be determined at sentencing, unless the amount cannot be ascertained at that time. (Pen. Code, § 1202.4, subd. (f); see *People v. Holmberg* (2011)

5

195 Cal.App.4th 1310, 1319.)  The defendant's right to notice and a hearing is protected if the amount claimed by the victim is set forth in the probation report, and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing.  (*People v. Cain* (2000) 82 Cal.App.4th 81, 86.)

Case law indicates that losses for purposes of victim restitution are not limited to those enumerated in Penal Code section 1202.4 and must be construed broadly and liberally to compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior.  (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1232 [victim's lost wages]; *People v. Crisler* (2008) 165 Cal.App.4th 1503, 1508 [expenses incurred by murder victim's parents in attending trial].)

"A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious.  [Citation.]  No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered."  (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.)  The trial court may consider almost any kind of information in calculating restitution.  (*People v. Phu* (2009) 179 Cal.App.4th 280, 283–284.)  " 'Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.  [Citation.]' [Citation.]"  (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)  " 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding."  (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)  In reviewing the evidence, we do not reweigh or reinterpret it; we determine only whether there is sufficient evidence to support the inference drawn by the trier of fact.  (*Ibid.*)

Appellant argues that there was not substantial evidence as to his and Lora Voroshuck's marriage status to support the trial court's finding that they were separated when potential community property was conveyed to Mr. Sickler by Lora Voroshuck. Respondent counters that the court determined that the $2,900 was not for the purchase of

6

the Camry and did not benefit Mr. Sickler; and appellant failed to substantiate that the $4,750 in payments that Lora Voroshock made for the Camry were appellant's community property.

"The burden is on the party seeking restitution to provide an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) In this case, defense counsel impliedly conceded that the amount owed by appellant for the damage to Mr. Sickler's Mercedes, his motorcycle and the equipment in the Mercedes was $7,500. The issue at the restitution hearing was how much appellant had already paid to Mr. Sickler. We point out that once the prosecution has made a prima facie showing of the victim's loss, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691 (*Prosser*).) Appellant failed to so demonstrate.

Assuming for the sake of argument that community property rules could bear upon the determination of the amount of the restitution order,[7] there is no evidentiary support for appellant's argument that Ms. Voroshuck paid for the Camry with community property funds; appellant produced no evidence to support such a claim. As to Ms. Voroshuck's payments to Ms. Davis, defense counsel merely asserted "[i]f there's some beef that it wasn't community property at the time, that it was Miss Voroshuck's, her private bank account that money came from. That's a matter to be resolved in family court."[8] Defense counsel was incorrect in asserting that it was a matter for the Family

---

[7] In fact, Family Code section 910 provides "(a) Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt. [¶] (b) 'During marriage' for purposes of this section does not include the period during which the spouses are living separate and apart before a judgment of dissolution of marriage or legal separation of the parties." Appellant presented no evidence that he and Ms. Voroshuck were still living together at the time of the arson incident.

[8] We note for the record that the checks used by Ms. Voroshuck to pay Ms. Davis

7

court to resolve; it was appellant's burden to demonstrate that the parties were still living together and that community property funds were used to buy the Camry. (*Prosser*, *supra*, 157 Cal.App.4th at p. 691.)

In short, there was no evidence that Ms. Voroshuck paid for the Camry from a community property source or otherwise; to put it another way, appellant failed to carry his burden of demonstrating that community property funds were used to buy the Camry.

Accordingly, we affirm the trial court's restitution order.

*Disposition*

The trial court's restitution order in favor of Mr. Sickler that was entered on April 9, 2013, is affirmed.


_____
ELIA, J.


WE CONCUR:


_____
RUSHING, P. J.


_____
PREMO, J.

---

contain only Ms. Voroshuck's name.