Filed 6/17/24  P. v. Polk CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN DARNELL POLK,<br><br>    Defendant and Appellant. | A166895<br><br>(Solano County<br>Super. Ct. No. VCR231000) |

A few months after appellant Kevin Darnell Polk shot and killed a man, the murder victim's mother temporarily lost her job.  She said her grief over the death of her son led to her termination, and she sought victim restitution for her lost wages.  The trial court granted the full amount requested.  Polk argues that the court erred, because his criminal conduct was not the direct or proximate cause of the mother's loss.  We disagree and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

During a February 2017 gathering in a Vallejo park to record a rap video, Polk shot and killed a former friend who he believed had broken into his home and stolen from him.  Polk pleaded guilty to voluntary

1

manslaughter (Pen. Code, § 192, subd. (a)),[1] admitted to firearm use (§ 12022.5, subd. (a)), and was sentenced to nine years in prison under a plea agreement.

After the victim's death, the victim's mother suffered significant physical and mental harm. She suffered stress, continually thought about her son's murder, and had difficulty sleeping more than an hour at night, despite taking sleep medication. She also had trouble eating, which caused her to lose 35 pounds. As a result of the trauma, she was diagnosed with a mental-health condition involving anxiety and depression.

The victim's mother worked for a supportive services agency as a caregiver/supervisor for disabled and mentally ill adults. She had worked there since 2008 "without incident." Around three months after her son's murder, in May 2017, the victim's mother was at a picnic as part of her job, and a client who had cerebral palsy kicked and spit on the victim's mother, then brought up her son. The victim's mother put her foot on the client's foot to stop the client from kicking. Afterward, the victim's mother self-reported the incident, and her employer terminated her, since "[l]egally, you're not supposed to" defend yourself when clients get physical. The victim's mother applied for, and received, disability payments. In October 2019, her previous employer rehired her.

The victim's mother sought a restitution award of $68,672 ($98,000 in lost wages for the time she was unemployed minus $29,328 she received in disability payments). She testified at a restitution hearing in November 2022 about her trauma and the incident that led to her termination. She said she continued to suffer stress and trauma, nearly six years after the murder.

---

[1] All statutory references are to the Penal Code.

Polk's counsel acknowledged that the victim's mother had suffered enormous grief because of her son's murder. Counsel argued, though, that Polk had not caused the victim's mother to be terminated or lose wages. Counsel also argued that it appeared that the mother had been wrongfully terminated, since she was fired for being attacked. The trial court disagreed, stating that "you're dealing with special-needs people, and you can't touch them. If you touch them you lose your job." According to the court, the key thing was that the victim's mother was acting because she was "in pain," and the court was "having difficulty finding . . . [a] comparative negligence theory."

The trial court ordered that Polk pay the full amount of restitution the victim's mother had requested, $68,672.

## II.
## DISCUSSION

Polk argues that the trial court abused its discretion in ordering the restitution because there was an insufficient connection between his criminal conduct and the lost wages of the victim's mother. (*People v. Giordano* (2007) 42 Cal.4th 644, 663 [restitution orders reviewed for abuse of discretion].) We are not persuaded.

After California voters in 1982 passed Proposition 8, The Victims' Bill of Rights (Cal. Const., art. I, § 28), the Legislature enacted statutory provisions enabling crime victims to seek restitution. (See *People v. Giordano, supra*, 42 Cal.4th at pp. 652–653.) Section 1202.4, subdivision (f)(3), provides that the trial court shall order that the defendant make restitution in an amount "that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred *as the result of* the defendant's criminal conduct." (Italics added.) Such economic loss includes lost wages. (§ 1202.4, subd. (f)(3)(D).) As an "immediate surviving family"

3

member of the victim, the victim's mother is a victim for purposes of the statute. (§ 1202.4, subd. (k)(1); see *People v. Crisler* (2008) 165 Cal.App.4th 1503, 1507–1508.) The standard of proof for victim restitution is preponderance of the evidence. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.)

There is no dispute that the victim's mother "suffered the trauma inherent in the murder of [her] son." (*People v. Crisler, supra,* 165 Cal.App.4th at p. 1509.) But Polk argues that the prosecution did not establish causation. "There are two aspects of causation at play here: cause in fact (also called direct or actual causation), and proximate cause. 'An act is a cause in fact if it is a necessary antecedent of an event.' " (*People v. Jones* (2010) 187 Cal.App.4th 418, 424–425.) "The causal connection embodied in the words 'as the result of' [in the restitution statute, section 1202.4, subdivision (f)(3)] is certainly indicative of direct causation." (*Id.* at p. 425.) " '[P]roximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his [or her] conduct." ' " (*Ibid.*) "Just as in tort law, . . . the law must impose limitations on liability for victim restitution other than simple direct causality or else a defendant will face infinite liability for his or her criminal acts, no matter how remote the consequences." (*Ibid.*)

Polk first claims that the prosecution failed to establish direct causation since there was no evidence that "*but for* her son's death," the victim's mother would not have defended herself in a way that led to her termination. (Italics added.) " ' "The 'but for' rule has traditionally been applied to determine cause in fact. . . . [¶] The Restatement formula uses the term *substantial factor* 'to denote the fact that the defendant's conduct has

4

such an effect in producing the harm as to lead reasonable men to regard it as a cause.' " ' " (*People v. Holmberg, supra*, 195 Cal.App.4th at p. 1321.) Applying this standard, we conclude there was sufficient circumstantial evidence of direct causation. The victim's mother had worked for her employer for nearly 10 years without apparently ever having been previously disciplined. Four months after her son's murder, a special-needs client kicked and spit on the victim's mother and mentioned her son. The reaction of the victim's mother to put her foot on the foot of the client to stop the kicking, while perhaps inappropriate, was done while she was stressed, sleep deprived, and otherwise suffering because of her trauma related to the murder. Considering that the burden of proof was preponderance of the evidence, we have no difficulty concluding that the prosecution sufficiently established direct causation.

As for proximate causation, "California courts have adopted the 'substantial factor' test in analyzing proximate cause. [Citation.] ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault.' " (*People v. Holmberg, supra*, 195 Cal.App.4th at pp. 1321–1322.) Stated differently, to overcome the presumption that a victim's loss was "a direct result of the defendant's criminal conduct" (§ 1202.4, subd. (f)(4)(A)), "a defendant must prove that his [or her] criminal conduct played, *at most*, ' " 'only an "infinitesimal" or "theoretical" part in bringing about' " ' the injury." (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 103.) The principles of

5

proximate causation in awarding restitution are analogous to their application in other aspects of criminal liability, where " ' "an 'independent' intervening cause will absolve a defendant of criminal liability . . . [but] in order to be 'independent' the intervening cause must be 'unforeseeable . . . an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' [Citation.] On the other hand, a 'dependent intervening cause will not relieve the defendant of criminal liability. 'A defendant may be criminally liable for a result directly caused by his [or her] act even if there is another contributing cause. If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is "dependent" and not a superseding cause, and will not relieve a defendant of liability. [Citation.] "[ ] The consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. [ ] The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his [or her] act." ' " ' " (*People v. Jones*, *supra*, 187 Cal.App.4th at p. 427, quoting *People v. Cervantes* (2001) 26 Cal.4th 860, 871.)

Polk's criminal conduct played far more than an infinitesimal or theoretical role in causing the victim's mother to suffer in a way that would negatively affect her interactions with her clients, thus leading to the loss of her job and the wages she otherwise would have earned. Again, there was no real dispute that she suffered the trauma that is inherent when a parent loses a child to violence (*People v. Crisler*, *supra*, 165 Cal.App.4th at p. 1509), and it could be reasonably contemplated (*People v. Jones*, *supra*, 187 Cal.App.4th at p. 427) that this trauma would lead her to interact in

6

difficult work situations—especially ones involving remarks about her son—in a way that she otherwise would not have.[2]

We reject Polk's argument that the trial court erred by not making a specific finding that Polk proximately caused the victim's mother's losses. He relies on *People v. Jones, supra,* 187 Cal.App.4th 418, where the victim of a hit-and-run accident sought restitution for several categories of economic loss, including the cost to repair a car bumper that was damaged when the victim was parking to attend a court hearing. (*Id.* at pp. 420–421.) The trial court awarded the victim around $1,100 less than what she requested but did not make a clear statement of the calculation used to reach the lower figure. (*Id.* at pp. 420–422.) The appellate court concluded that this failure to explain the calculation amounted to an abuse of discretion, and it remanded for further proceedings for that reason. (*Id.* at pp. 420, 427.) To provide guidance on remand, the court addressed the defendant's argument that his criminal conduct had not proximately caused the victim's damaged bumper. (*Id.* at pp. 424–427.) The court concluded that general principles of proximate causation apply in determining whether to award restitution under section 1202.4. (*Jones* at pp. 424–427.) But since it was unclear whether the cost of the bumper repair had been included in the trial court's

_____

[2] Polk would likely have been particularly aware of the effect the murder would have on the victim's mother, since he knew the family. At Polk's sentencing hearing, the victim's mother addressed him directly: "What hurt the most is you called me moms, eat my food, called him [the murder victim] a friend, which was obvious you never was." She continued, "My son should have been burying me, but you a so-called friend. Never in the years have I known you, I thought you shot him ten times, taking his life from me." While these statements were not made under oath, there is no dispute that Polk was an acquaintance of the man killed. In any event, there was sufficient sworn testimony to support a finding of proximate causation even absent these statements.

award, the court remanded the matter to determine in the first instance whether the defendant's criminal conduct had proximately caused the victim's loss. (*Id.* at p. 427.)

Here, unlike in *Jones*, there is no dispute how the trial court calculated the restitution award, which consisted of the victim's mother's lost wages, minus money she had received in disability payments. Although the court's award did not specifically use the term proximate cause, it is clear that the court considered the issue since the parties argued about causation following the mother's testimony. Polk's attorney questioned whether the mother's termination was attributable to Polk or to the mother's employer. The court observed that the mother was "probably not in a good place to be caring for someone else" because of her grief and that such grief might have led others "to do more self-injurious things tha[n] lose their jobs and they are doing those things because they are in pain." In other words, it was the mother's grief over the murder of her son that caused her—someone with "no history or track record [of being] some terrible employee"—to act in a way that caused her to lose her job. Again, although the court did not use the precise term "proximate cause," this is the concept the court described.

In arguing that proximate causation was not established, Polk misconstrues the trial court's related remarks about comparative negligence. Again, Polk's counsel argued that the mother's termination should have been attributable to her employer as a type of "wrongful termination" since she was fired after being "attacked." Polk apparently was suggesting that the amount requested should be reduced (or denied) based on the *employer's* fault in firing the mother for a wrongful reason. The trial court rejected the argument since "[when] you're dealing with special-needs people, . . . you can't touch them. If you touch them you lose your job." The court said that

under the circumstances it was "having difficulty finding, you know, [a] comparative negligence theory of anywhere where I can deduct something from the end of the deal."

Relying on *People v. Millard* (2009) 175 Cal.App.4th 7, Polk contends the court was incorrect since California law "allow[s] for reduction of restitution based on the victim's negligence." In *Millard*, the defendant was convicted of driving under the influence and causing bodily injury to another person, and the trial court awarded restitution to the man who was injured. (*Id.* at pp. 13, 20, 22, 24.) But the trial court reduced the award by 25 percent to account for the victim's comparative fault in causing the accident. (*Id.* at p. 24.) The appellate court held that "a trial court *may* apply the doctrine of comparative negligence in awarding victim restitution against a criminally negligent defendant when the court finds the victim's contributory negligence was a substantial factor in causing his or her injuries." (*Id.* at p. 13, italics added.) This case is inapposite, since the victim's mother played no role whatsoever in the underlying crime. And although *Mallard* held that trial courts have the *discretion* to apply principles of comparative negligence, it did not hold that they are *compelled* to do so. There was no reason to do so here, where the trial court observed that "[i]t sounds like an otherwise nice, older lady who's doing this work, who's in this traumatic, terrible situation, obviously, not doing well at all," and that it would have been reasonable for her to have engaged in *worse* behavior (such as "[being] out using and doing all these other things") under the circumstances. The trial court's reasoning certainly did not amount to an abuse of discretion.

## III.
### DISPOSITION

The restitution order is affirmed.

9

_____

Humes, P.J.

WE CONCUR:


_____

Banke, J.



_____

Siggins, J.*




*Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*People v. Polk* A166895