Filed 2/26/21  P. v. Young CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076397 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD253359) |
| ROBERT O. YOUNG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

In 2015, defendant Robert O. Young was charged by amended information with seven counts of practicing medicine without a license (Bus. & Prof. Code, § 2052, subd. (a); counts 1, 3 & 5–9); and two counts of grand

theft over $950 (Pen. Code,[1] § 487, subd. (a); counts 2 & 4). A jury in February 2016 found defendant guilty of counts 5 and 9, not guilty of count 7, and could not reach a verdict on the remaining counts.

In April 2017, defendant pleaded guilty to two additional counts of practicing medicine without a license (counts 6 & 8), in exchange for the dismissal of the remaining counts, a *Harvey* waiver,[2] and a stipulated three-year eight-month prison term. In June 2017, the court sentenced defendant as set forth in the stipulation and scheduled a restitution hearing, which was continued multiple times. About two years later, the court ordered defendant to pay victim restitution to various individuals and/or their representatives.

Defendant in his opening brief only challenged the victim restitution awards of $14,792.49 to Moe F. (Moe) and Vicki F. (Vicki) (counts 3 and 4[3]), and of $10,500 to Terri A. (Terri) (count 8). Specifically, defendant claimed the court erred in including $138.83 in the award to Moe and Vicki because this particular loss predated by years defendant's criminal conduct. He also claimed the court erred by including $10,000 Terri paid to take a December 2012 microscopy class taught by defendant, arguing the class was not related to his criminal conduct.

---

[1]	All further statutory references are to the Penal Code unless otherwise noted.

[2]	See *People v. Harvey* (1979) 25 Cal.3d 754, 758–759 (concluding that facts supporting dismissed charges may not be used to impose sentencing consequences unless the party waives that right).

[3]	When calculating victim restitution, a court generally must obtain a *Harvey* waiver if it considers the defendant's conduct underlying a charge dismissed by a plea bargain. (See § 1192.3, subd. (b).)

The People in their respondent's brief argued the trial court's restitution award to Moe and Vicki did not include the disputed $138.83 loss, as demonstrated by the People's August 25, 2017 restitution memorandum on which the court relied in rendering the victim restitution awards. The People therefore argued there was no error with respect to this particular award. The People also argued the award to Terri should include the $10,000 she paid for defendant's microscopy class because this was an economic loss she sustained as a direct result of his criminal conduct; or, in the alternative, because defendant's criminal conduct was a substantial factor in causing her to sustain this loss.

In his reply brief, defendant impliedly concedes the $138.83 loss incurred by Moe and Vicki was not part of the court's restitution award of $14,792.49, inasmuch as defendant's reply addresses *only* the award to Terri. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the defendants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].) Therefore, our decision in this case is limited to the restitution awarded Terri.

As we explain, we conclude the trial court did not err when it awarded Terri $10,500 in victim restitution. Affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Between about 2010 and 2013, defendant operated the pH Miracle Center (Center) on a 40-plus acre ranch located in Valley Center, California. The Center was not a licensed medical care facility, nor was defendant licensed in California as a physician or naturopathic doctor. The Center nonetheless housed patients, including those critically ill, for medical treatment. Defendant, who referred to himself as "Dr. Young," held no

3

postsecondary degrees from any accredited institutions, despite the fact he claimed he had a master's degree and a Ph.D. in nutrition, a Doctor of Science degree in chemistry and biology, and a doctorate in naturopathy.

In his books, writings, and teachings, defendant represented that based on *his* scientific research, he could determine a person's medical condition through an analysis of the person's blood; and that he could teach others— including Terri—to do so as well. He further represented that through his program of increasing the alkalinity of a person's body, including by giving the person IVs of sodium bicarbonate, or baking soda, a person with sustained effort could reduce or eliminate disease, including cancer. Persons who came to the Center often paid thousands of dollars a day for treatment using defendant's methods and nutritional program. However, medical professionals who reviewed defendant's alleged breakthrough methods and treatments found little to no medical science supported them.

In addition to presenting himself as a medical provider, defendant employed several licensed and unlicensed practitioners to assist him at the Center. One such individual was Dr. Bennie Johnson, a licensed osteopathic physician who ended up losing his medical license as a result of his involvement with defendant and the Center. Although Dr. Johnson wrote prescriptions for IV therapies, defendant was directly involved in the day-to-day care of patients at the Center. Defendant also advised multiple persons to stop taking medication prescribed by licensed medical professionals, and/or following the treatment plans recommended by such professionals.

In early December 2012, Terri participated in a week-long microscopy class defendant taught at the Center. At defendant's criminal trial, Terri testified that she paid $10,000 to take the class; that she took the class because she was sick with lupus and was trying to help herself feel better;

4

and that she believed maybe she also could use what she learned in the class to help others. On the first day of class defendant introduced himself as "Dr. Young," and wore a white lab coat with the name "Dr. Young" printed on it.

Terri testified she believed defendant was a "doctor" in "microbiology and cancer." She further testified she signed up to take the class because defendant claimed to have degrees in biochemistry and biology. Defendant on the first day of class also described the treatments available at the Center, handed out a "brochure" with this information including a price list, advised the students the treatments were available "while [they] were there," and told students if they wanted any treatment to "just talk to one of the girls up front, and they would get the paperwork started."

Terri testified that during the week-long class, they went over blood analysis. Defendant talked about how diet and sickness affected blood, and how a person's blood could be analyzed under a microscope to determine whether he or she was sick. At the conclusion of the class, the Center provided a student a certificate if the student submitted 100 samples along with a "test" provided by the Center.

A few days into the class, during a break Terri told defendant she was not feeling well because of her lupus, and asked him to recommend a treatment from the brochure. Defendant suggested an IV with "minerals," "vitamins," and other "things," which Terri testified was similar to receiving a "booster shot." Defendant told Terri the IV would make her feel better. Terri paid $500 for the IV. One of the nurses started the IV while Terri sat in the classroom with other students. Terri felt no better after receiving the IV.

Terri testified she initially came to the Center not for medical treatment, but to take defendant's class. Once in the class, however, she

sought medical treatment from defendant because of her lupus and her not feeling well while attending his class.

As relevant here, the amended information in count 8 charged defendant as follows with a violation of Business and Professions Code section 2052, subdivision (a): "On or about December 5, 2012, ROBERT OLDHAM YOUNG did unlawfully practice and attempt to practice, and advertise and hold himself out as practicing, a system and mode of treating the sick and afflicted in California, and diagnosed, treated, operated for, and prescribed for an ailment, blemish, deformity, disease, disfigurement, disorder, injury, and other physical and mental condition of a person, to wit: [Terri], LUPUS, without having at the time of so doing a valid, unrevoked, and unsuspended certificate . . . and without being authorized to perform the act pursuant to a certificate obtained in accordance with some other provision of law. . . ."

Following defendant's plea, the prosecution filed its restitution memorandum requesting Terri be reimbursed $500 for the IV treatment *and* $10,000 for the microscopy class she attended while receiving the IV. The defense responded that Terri was not entitled to restitution for the class, claiming that cost was not a loss related to defendant's practicing medicine without a license.

As relevant to this appeal, at the May 20, 2019 restitution hearing the prosecution argued Terri was entitled to reimbursement for the class because she relied on defendant's false representations that he was a "medical provider" when she signed up for the class. The defense disagreed, arguing the $10,000 she paid for the class had "absolutely nothing to do with the administration of [the] IV" that formed the basis of his guilty plea on count 8. The defense thus argued there was no "nexus" between the request for

6

restitution for the class and defendant's conviction.  The defense, however, did not challenge the $500 restitution award for the IV Terri paid for and received during the class.

In response, the prosecutor rejected the defense's claim that victim restitution should be limited to the IV payment, arguing "[a]ll" of defendant's unlawful practice of medicine counted as a crime under Business and Professions Code section 2052, subdivision (a).  The prosecutor argued that defendant's criminal conduct included "advertising himself or holding himself out as practicing any system or mode of treating the sick or afflicted in the State"; and that any payments the victims made while at the Center, including Terri's payment for the microscopy class, involved defendant's unauthorized practice of medicine.

After taking the matter under submission, as relevant here the court in its May 24, 2019 tentative order awarded Terri $10,500 in restitution.  The court explained:  "[T]he $10,000 cost of the microscopy class incurred by [Terri], although, instructional in nature [versus] therapeutic treatment, was conducted based upon misrepresentations of Defendant  about his ability to cure cancer/diseases through his faulty interpretation of science.  This faulty interpretation of science resulted in all the victims spending vast sums of instructional, treatment, exercise, nutritional, and other expenditures of monies, all of which were captured in the convictions by the Jury and subsequent post-trial plea bargain."  The court in a July 30, 2019 order confirmed its May 24 tentative.

## DISCUSSION

A.  *Victim Restitution*

When a victim suffers economic losses as a function of a defendant's actions that resulted in his or her conviction, a trial court must require the

7

defendant to make restitution as part of the sentence. (*People v. Phu* (2009) 179 Cal.App.4th 280, 283 (*Phu*); § 1202.4, subd. (a)(3)(B)[4].) To achieve this objective, a trial court has broad discretion to order restitution so that victims are fully compensated for their losses. (*People v. Giordano* (2007) 42 Cal.4th 644, 663 (*Giordano*).) It is well settled that a victim's right to restitution is to be broadly and liberally construed. (*People v. Stanley* (2012) 54 Cal.4th 734, 737; *Phu,* at p. 283.)

Section 1202.4 provides recovery for a broad variety of economic losses that are incurred as a direct result of a defendant's criminal conduct. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046 (*Keichler*).) Subdivision (f) of this statute provides: "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) It further specifies that restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct. . . ." (§ 1202.4, subd. (f)(3); see *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321–1322 (*Holmberg*) [noting a court may impose restitution for economic losses to the extent the defendant's criminal conduct played a "substantial factor" in causing the victim's economic loss].)

---

[4] Subdivision (a)(3) of section 1202.4 provides in part: "The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following: [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment."

B. *Standard of Review*

We review a trial court's restitution order for an abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 663.) In so doing, we draw all reasonable inferences in favor of the trial court's order and will affirm it if there is substantial evidence to support it. The statute does not require "any particular kind of proof" and "[n]o abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542–1543.)

However, "when the legal basis for a restitution award is under challenge," this court independently reviews "the legality of the restitution award in light of the applicable statutes and any relevant decisional law." (*People v. Brunette* (2011) 194 Cal.App.4th 268, 277; see *People v. Williams* (2010) 184 Cal.App.4th 142, 146 [recognizing that "when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal"].)

C. *Analysis*

We conclude Terri's $10,000 payment to attend defendant's microscopy class was an economic loss caused by defendant's criminal conduct. The record shows defendant referred to himself as a doctor during the class, and while teaching the class wore a white lab coat with the name "Dr. Young" printed on it.

Also during the class, defendant claimed that he could examine a person's blood to determine whether or not that person was sick; that he examined Terri's blood in the class and from that examination announced to the class she was "fine"; that he also examined the blood of others, including patients of the Center who had cancer, in order to teach Terri and the other students how to read live blood for the presence or absence of disease; and

9

that Terri spent $10,000 to take the class, which she paid in installments, because she believed defendant was a medical provider who could help her feel better based on what turned out to be "faulty science."

Thus, the record supports the finding that defendant's classroom conduct of holding himself out to be a medical provider, and examining Terri's blood under a microscope—before offering his medical opinion that Terri was "fine," were within the criminal conduct for which he pleaded guilty in count 8.  (See *Keichler, supra,* 129 Cal.App.4th at p. 1046.)

We separately conclude that defendant's criminal conduct was a substantial factor in causing Terri's economic loss of $10,000 for the class. (See *Holmberg, supra,* 195 Cal.App.4th at pp. 1321–1322 [recognizing restitution may be awarded when a defendant's criminal conduct plays a "substantial factor" in causing a victim's economic loss].)

The record shows that defendant on the *first* day of the week-long class gave students, including Terri, a brochure listing the treatments available at the Center; that defendant represented the treatments were available to students while they were *in the class*; that defendant recommended an IV for Terri when she told defendant during a class break she was not feeling well; and that Terri received the IV during class.

We conclude defendant's conduct of charging Terri $10,000 for the class, and using the class to further promote and sell his products and services under the guise of being a certified medical provider, played far more than a " 'negligible or theoretical' " part in bringing about Terri's loss.  (See *Holmberg, supra,* 195 Cal.App.4th at p. 1321 [noting the " ' "substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical" ' "].)

Based on the foregoing, we therefore conclude there is ample record evidence to support the finding of a "nexus" between defendant's criminal conduct of practicing medicine without a license and Terri's $10,000 economic loss for the class in which she received an IV.  (See *Holmberg, supra,* 195 Cal.App.4th at p. 1321.)

DISPOSITION

The judgment, including the restitution award of $10,500 to Terri, is affirmed.

BENKE, Acting P. J.

WE CONCUR:


AARON, J.


GUERRERO, J.

11