Filed 5/21/21  P. v. Tourtillott CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br><br>MADISEN TOURTILLOTT,<br>        Defendant and Appellant. | A161247<br><br>(San Francisco County<br> Super. Ct. No. SCN227175) |

Defendant Madisen Tourtillott appeals from the court's sentence, particularly its order that she pay restitution to three different victims totaling $15,629.79.  Tourtillott's appellate counsel requests this court independently review the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Counsel informed Tourtillott of her right to file a supplemental brief, and she has not filed one.  Upon our *Wende* review, we conclude there are no arguable appellate issues requiring further briefing and affirm.

**BACKGROUND**

In March 2017, the San Francisco County District Attorney filed an information alleging that on or about February 8, 2017, Tourtillott and another defendant, Smith, burglarized L.M.'s home with another person other than an accomplice present in the residence (Pen. Code, §§ 459, 667.5,

1

subd. (c)(21)[1]) and received or bought stolen property belonging to A.S. (§ 496, subd. (a)). The information alleged in separate counts that Smith assaulted with force likely to cause great bodily injury, robbed and falsely imprisoned L.M., and also alleged certain enhancements.

At the preliminary hearing, L.M. testified that on February 8, 2017, he and three roommates lived together in a house on San Francisco's Treasure Island. In the late afternoon, he answered a knock on the front door to find Tourtillott, a stranger to him, standing there. She asked him for "Sean." L.M. had never had a roommate there named Sean and told her no one by that name lived there. L.M. closed the door and returned to his room.

About twenty minutes later, L.M. heard another knock on the front door. Through the peephole, he saw a different girl. He opened the door and two men, including Smith, also a stranger to him, forced their way into his home accompanied by the girl. They kept asking for "Sean." The two men "brutally" beat L.M. and threatened to further harm him as they asked about money and drugs. Smith kicked down doors and the men threatened another roommate who was home. L.M saw the two men grab televisions, laptops, a video game console, his brother's locksmith tools and wooden safe. They put them in the trunk of a red Mustang as Tourtillott sat in the driver's seat. The assailants and Tourtillott left in the Mustang, driven by one of the girls (he could not tell which one). He suffered a loose tooth and a facial laceration that required seven stiches.

Tourtillott entered into a negotiated disposition of her case, which the prosecutor stated in court included that she pay "restitution" without providing further details. Tourtillott confirmed that the stated disposition terms were accurate. She pleaded no contest to misdemeanor receiving

---

[1] Statutory citations are to the Penal Code unless otherwise stated.

2

stolen property from A.S.  The court found her guilty and granted the prosecution's motion to dismiss the remaining counts against her.  It ordered imposition of sentence suspended and placed her on court probation for two years subject to various terms and conditions, including that she "make restitution to the two victims [meaning L.M. and A.S.] as determined by pretrial diversion."

The probation department filed a May 2018 restitution report and a June supplemental report.  It indicated that A.S. sought economic losses totaling $10,857.72 total, for his passport ($195), a television ($600), two phones ($1,300), a computer ($1,300), two pairs of Air Jordan shoes ($400), a gold necklace ($500), two suits ($1,000), locksmith tools ($5,362.72), and cabinet damage ($200).  L.M. sought $15,100 for lost wages ($12,600), medical expenses ($2,300), and personal property ($200).  X.H. sought $2,272.07 for his computer and hard drives ($1,626.67), television ($253.91), and video game console ($391.49).  The department submitted documents A.S. and X.H. submitted showing what they paid for some of these items to support their stated economic losses and indicated that L.M. had not submitted any documentation for his lost wage claim.  The department was unable to locate the other roommate, Y.L.

Tourtillott filed a brief disputing the restitution sought and included the preliminary hearing transcript as an exhibit.  She contended that she did not owe restitution to L.M. or X.H. because their losses were unrelated to her offense, she had not given a waiver under *People v. Harvey* (1979) 25 Cal.3d 754 regarding the dismissed charges, ordering her to pay L.M.'s and X.H.'s losses violated her due process rights and their losses were not contemplated in the negotiated disposition.

3

The prosecution filed a brief arguing in favor of the restitution sought. It argued that Tourtillott had "set up this home invasion by casing the apartment and asking for a fictitious resident," and that the court could impose restitution as a condition of probation because it was reasonably related to deterring future, similar criminal conduct, was "reasonably tied to the underlying crime" and did not require a *Harvey* waiver.

At the restitution hearing, Tourtillott presented no evidence and no witnesses testified, but the prosecution presented two police reports for the court's review. They conveyed information consistent with L.M.'s testimony, differing only in a few particulars. They indicated police arrived at the scene soon after the incident had occurred and spoke with L.M. and Y.L. The two and another roommate, X.H, who arrived after the incident, said the assailants had stolen their personal property, but L.M. was not sure what had been stolen. An incident report listed as stolen a cell phone belonging to Y.L., and a computer ($1,200), a video game console ($399), a television ($450) and a cell phone of a value to be determined belonging to X.H.

A neighbor who had heard arguing next door saw two males and a female carry computers and televisions out of L.M.'s residence to a red Ford in which a female sat in the back seat. The four left in the car with the female who had exited the house driving. He gave the police the Ford's license plate number. At 9:00 p.m. that night, police located the car in San Francisco. Tourtillott and Smith were sitting inside. L.M. and Hayes identified them in a "cold show" as participants in the incident. L.M. also identified a wooden trunk, some paperwork and a wallet in the Mustang as having been stolen from his brother, A.S., during the incident.

At the restitution hearing, Tourtillott's counsel, along with the arguments in her brief, argued against restitution because Tourtillott's

4

involvement was limited to being a passenger in the Mustang, she did not participate in any of the events that occurred inside the home, there was no evidence that she knew what would occur there, she never touched L.M. and she should not be held jointly and severally liable for restitution with Smith because they were not convicted of the same crimes. She specifically opposed restitution for L.M.'s medical expenses and lost wages claim, particularly in the absence of any supporting documentation, and any restitution for property that was returned to the victims undamaged, but acknowledged it was unclear what was actually retrieved.

The prosecutor argued there was a reasonable nexus between Tourtillott's conviction and the requested economic losses, including because some of the property that was the basis for her conviction was stolen from the subject residence and Tourtillott's conduct indicated she was "tied to this home invasion in some way."

The court recessed the hearing for a week in order to review the police reports and claimed losses and allow Tourtillott's counsel to submit further briefing, which she did regarding the contentions she had raised in the hearing. Upon reconvening, the parties debated whether a *Harvey* waiver was necessary. The court concluded that restitution for all of the victims was appropriate. It noted that the sentencing judge had informed Tourtillott her plea agreement included restitution as a condition of probation. Also, "the fact that [Tourtillott] pled to [receiving stolen property] did not require a Harvey Waiver under these circumstances . . . and . . . I don't think that the dismissed counts have any bearing on necessitate for [*sic*] a Harvey waiver. She pled to receiving stolen property out of the same facts and circumstances giving rise to the more serious charges, which were dismissed, but the victims were all the same." The court found that the prosecution had met its burden

5

of making a prima facie case for restitution and that Tourtillott did not rebut any of the claimed restitution amounts with evidence. It ordered Tourtillott to pay restitution of $2,500 to L.M., $2,272.07 to X.H., and $10,857.72 to A.S. for a total of $15,629.79. It did not order her to pay L.M.'s lost wages because of the lack of documentation. It retained jurisdiction to determine restitution for Y.L. should he make a claim in the future.

Tourtillott timely filed a notice of appeal.

## DISCUSSION

Upon conducting an independent review of the record under *Wende*, we conclude there are no arguable appellate issues requiring further briefing.

"[V]ictim restitution is mandated by both the Constitution and section 1202.4." (*People v. Rowland* (1997) 51 Cal.App.4th 1745, 1751.) "In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims. (§ 1202.4, subd. (f).) The restitution order must be sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct, including, but not limited to, among other things, full or partial payment for the value of stolen or damaged property (§ 1202.4, subd. (f)(3)(A)) . . . ." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146.)

The court should order restitution for stolen or damaged property in the amount of "the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).) "At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss." (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; see also § 1202.4, subd. (f) [court shall order

6

restitution "based on the amount of loss claimed by the victim or victims or any other showing to the court"].)  A victim's unsworn statement can constitute prima facie evidence of the victim's economic loss, including one made in a probation report about the value of stolen or damaged property. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543; but see *People v. Vournazos* (1988) 198 Cal.App.3d 948, 952, fn. 2, 958-959 [court held insufficient a statement from the victim itemizing stolen or damaged items with asserted values and repair costs].)

Although *People v. Vournazos* represents a split in appellate authority on what constitutes a prima facie showing, most courts have rejected its approach, including our own court, which instead has followed case law holding that "an item's original cost can generally be treated as evidence of replacement cost for purposes of restitution.  [Citation.]  Moreover, a property owner's statements of value, recapitulated in the probation report, 'should be accepted as prima facie evidence of value.' [Citation.] 'When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount.  "A defendant's due process rights are protected if he is given notice of the amount of restitution sought and an opportunity to contest that amount." ' " (*In re S.S.* (1995) 37 Cal.App.4th 543, 547; see also, e.g., *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [absent a challenge by the defendant, court could impose the restitution amount specified in the probation report]; *People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406-1407 [probation report's discussion of victim's loss and recommendation constitutes prima facie evidence of loss]; *People v. Collins* (2003) 111 Cal.App.4th 726, 734 [when the probation report includes a discussion of the victim's loss and a recommended amount of

7

restitution, defendant must come forward with contrary information to challenge that amount].) Also, "while the amount of restitution cannot be arbitrary or capricious, '[t]here is no requirement the restitution order be limited to the exact amount of the loss [for] which the defendant is actually found culpable . . . .' " (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 800; *People v. Akins* (2005) 128 Cal.App.4th 1376, 1382 [same].)

Further, restitution as a condition of probation need not be limited to losses that are the direct consequences of a defendant's crime. (*People v. Lent* (1975) 15 Cal.3d 481, 486.) Under *Lent*, restitution imposed as a condition of probation "must be reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1123.) Thus, "[t]hat a defendant was not personally or immediately responsible for the victim's loss does not render an order of restitution improper." (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1209.)

We review a restitution order for abuse of discretion, broadly and liberally construing a victim's restitution right. (*People v. Millard*, *supra*, 175 Cal.App.4th at p. 26.)

Under these legal standards, there is no question that the prosecution's presentation of itemized losses claimed by the victims here, supported by documentation showing the cost of some of these items, constituted a prima facie showing for the amount of restitution ordered by the court and that Tourtillott submitted nothing to rebut these stated losses. Her main contention was that a *Harvey* waiver was necessary to obtain restitution for the dismissed counts, but the law is clear that restitution can be ordered as condition of probation for conduct reasonably related to the crime of which the defendant was convicted or to deter future criminality. The sentencing

8

court could reasonably conclude that restitution to all of the victims was appropriate here because they were direct victims who had property stolen from them, and Tourtillott's proven conduct, including but not limited to her knocking on the front door of the residence and asking for "Sean" as did the assailants shortly thereafter, her sitting in the red Mustang as the assailants removed items from the residence and placed them in the trunk of the car, her driving away with the assailants and her being found with Smith later that night in the same car with property stolen from the residence, indicate she was implicated in stealing the property for which the victims sought restitution.

## DISPOSITION

The rulings appealed from are affirmed.

_____
STEWART, J.


We concur.


_____
KLINE, P.J.


_____
RICHMAN, J.


*People v. Tourtillott* (A161247)

10