Filed 9/23/24  P. v. Carter CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062704 |
| v. | (Super. Ct. No. 21WF3051) |
| PAUL DAVID CARTER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Erin Rowe, Judge. Affirmed.

Matthew C. Tymann, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette

C. Cavalier, James Spradley, Flavio Nominati, Deputy Attorneys General, for Plaintiff and Respondent.

*　　　*　　　*

Paul David Carter appeals from a victim restitution order requiring him to compensate the victim for residential security expenses. He contends such expenses are recoverable only in cases involving a violent felony or domestic violence. We disagree, and conclude the expenses are recoverable in this case, which involved felony vandalism. Carter also disputes the amount of the award. As explained below, we conclude Carter failed to show error. The evidence submitted supported the amount awarded. Accordingly, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After being evicted from the victim's home, on August 16, 2021, Carter returned in violation of a restraining order. He threw paint on portions of the house and two cars parked in front of the house.

Carter was charged with felony vandalism and misdemeanor violation of a protective order. After a jury found Carter guilty as charged, the trial court imposed a sentence of two years of supervised probation. It also ordered Carter to pay victim restitution, which included $530.97 in residential security expenses.

DISCUSSION

I.

VICTIM RESTITUTION

"Under the California Constitution, as amended in 1982 by Proposition 8 (commonly known as The Victims' Bill of Rights), every crime victim has a right to be compensated by the defendant for losses incurred as a result of the defendant's crime. (Cal. Const., art. I, § 28, subd. (b)(13).)"

2

(*People v. Martinez* (2017) 2 Cal.5th 1093, 1100.) Similarly, Penal Code section 1202.4, subdivision (a)(1)[1] provides: "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." Consistent with the constitutional restitution directive and legislative intent, section 1202.4, subdivision (f) provides in relevant parts: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution."

Section 1202.4, subdivision (f)(3) provides: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following. . . ." (§ 1202.4, subd. (f)(3).) The statute then lists 12 categories of "economic loss," including: "(F) Noneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7."; "(G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court."; "(I) Expenses incurred by an adult victim in relocating away from the

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

defendant, including, but not limited to, deposits for utilities and telephone service, deposits for rental housing, temporary lodging and food expenses, clothing, and personal items. Expenses incurred pursuant to this section shall be verified by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim,"; and "(J) Expenses to install or increase residential security incurred related to a violation of Section 273.5, or a violent felony as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks." (§ 1202.4, subds. (F), (G), (I) & (J).)

## II.

### RESTITUTION FOR RESIDENTIAL SECURITY EXPENSES

Victim restitution for residential security expenses was the subject of three published cases in 2017 and early 2018. In *People v. Salas* (2017) 9 Cal.App.5th 736, 738 (*Salas*), the defendant pleaded guilty to domestic violence, and was sentenced to three years in prison. He also was ordered to pay victim restitution, which included $14,055.48 for security windows and an alarm system. (*Ibid.*) On appeal, the defendant argued the trial court erred in awarding victim restitution for residential security expenses under section 1202.4, subdivision (f)(3)(J), which at the time "authorize[d] an award of '[e]xpenses to install or increase residential security incurred related to a violent felony, as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks.'" (*Salas,* at p. 741.) The appellate court agreed, holding that domestic violence is not a violent felony for the purposes of section 1202.4, subdivision (f)(3)(J). (*Salas, supra,* 9 Cal.App.5th at p. 744.) The court rejected the Attorney General's argument

4

that the award was permissible under the general language of section 1202.4, subdivision (f)(3), concluding that this interpretation would render subdivision (f)(3)(J) superfluous. (*Salas, supra,* 9 Cal.App.5th, at p. 743.) The court also applied the principle of *expressio unius est eclusio alterius* to support its interpretation. It stated: "By expressly permitting recovery for '[e]xpenses to install or increase residential security incurred related to a violent felony,' (§ 1202.4[, subd.] (f)(3)(J)) the Legislature by implication did not permit recovery of residential security expenses incurred related to an offense that is not a violent felony." (*Id.*)

In *People v. Henderson* (2018) 20 Cal.App.5th 467 (*Henderson*), the appellate court disagreed with the *Salas* court to the extent it held that "'residential security expenses remains recoverable via restitution only when they are incurred related to a "violent felony."'" (*Henderson* at p. 473, fn. 3.) There, the defendant pleaded no contest to stalking, felony vandalism, and disobeying a domestic relations court order. As part of his sentencing, the defendant was ordered to pay for the victims' security system expenses. (*Id.* at p. 469.) The appellate court agreed that a restitution award for residential security systems was not authorized under section 1202.4, subdivision (f)(3)(J) because the defendant was not convicted of a violent felony. However, it concluded that "section 1202.4, subdivision (f)(3)(J) does not limit discretionary restitution for residential security systems to defendants convicted of a violent felony, thus the restitution order in this case was generally authorized under section 1202.4, subdivision (f)." (*Henderson, supra,* 20 Cal.App.5th at p. 470.) The court distinguished *Salas, supra,* 9 Cal.App.5th 736, on the basis that "*Salas* d[id] not decide whether the restitution order was permissible as an exercise of the trial court's discretion under the broader language of that portion of subdivision (f)(3) quoted *ante*."

5

(*Henderson*, 20 Cal.App.5th at pp. 472-473, fn. omitted.) However, the court also noted that it disagreed with the gist of the analysis in *Salas*, and specifically the *Salas* court's argument that interpreting section 1202.4, subdivision (f)(3) to authorize victim restitution for residential security expenses for any felony would render section 1202.4, subdivision (f)(3)(J) superfluous. The *Henderson* court asserted that its "interpretation of section 1202.4, subdivision (f)(3)(J) does not read any language *out* of the statute. On the contrary, subdivision (f)(3)(J) remains intact and means what it says— that restitution for home security systems is mandatory in certain cases. That specific subdivision simply does not operate to bar discretionary restitution orders for home security systems where such orders may be otherwise appropriate." (*Henderson, supra,* 20 Cal.App.5th at p. 473.)

The appellate court in *People v. Brooks* (2018) 23 Cal.App.5th 932 (*Brooks*) also disagreed with the *Salas* court to the extent it held that residential security expenses were limited to cases where the defendant was convicted of a violent felony. The *Brooks* court contended the canon of *expressio unius* should not apply to limit restitution, noting it was well-established that the canon "'does not apply to an item in an illustrative list, such as we have here, as indicated by the language 'including, but not limited to.'" (*Id*. at p. 943, fn. omitted.) The *Brooks* court concluded that "subdivision (f)(3)(J) of section 1202.4 must be construed to set a floor, not a ceiling. The provision should not be interpreted to impliedly limit—or vitiate—victims' constitutional rights." (*Brooks*, 23 Cal.App.5th at p. 944.)

In July 2018, the Legislature amended section 1202.4, subdivision (f)(3)(J), to apply to the commission of violent felonies and domestic violence under section 273.5. (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 2226 (2017-2018 Reg. Sess.) § 1.) According to legislative

analysis of the amendment, it "would expand the court's authority to order victim restitution for costs of residential security in domestic violence cases, which do not necessarily always qualify as violent felonies," (Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 2226 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1), and "allow[ ] the court to order victim restitution to cover the costs of installing a residential security system in domestic violence cases." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Assem. Bill 2226 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1.) The former analysis noted that "[t]he question of whether the trial court abuses its discretion by ordering a defendant to pay restitution to cover the costs of residential security expenses when the defendant is not convicted of a violent felony [was] currently pending before the California Supreme Court." (Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 2226 (2017-2018 Reg. Sess.) as amended May 25, 2018, p. 1.)[2]

### III.

#### RESIDENTIAL SECURITY EXPENSES FOR FELONY VANDALISM

Carter first contends the *Salas* court's interpretation should govern, and argues the 2018 amendment to section 1202.4, subdivision (f)(3)(J) supports that interpretation. Stated differently, he contends that a victim may receive restitution for residential security expenses only where the expenses were incurred as a result of a violent felony or a crime of domestic violence. "[W]hen the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146.)

___

[2] The California Supreme Court subsequently dismissed review of the case involving the issue. (See *People v. Calavano*, S242474, rev. granted Aug. 09, 2017, rev. dismissed, Dec. 12, 2018.)

"A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.] [¶] Additionally, however, we must consider [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part. 'We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.]' [Citations.] "'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.] . . . "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' [Citations]." (*DuBois v. Workers' Comp. Appeals Bd*. (1993) 5 Cal.4th 382, 387-388.) When "'the statutory language may reasonably be given more than one interpretation, ""courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute."'"" [Citation.]" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

Here, section 1202.4, subdivision (f)(3) broadly grants the trial court authority to award restitution "to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following . . . ."

Thus, the following items, including residential security expenses in cases involving a violent felony or a crime of domestic violence, are merely representative examples of recoverable expenses. The listed items are not intended to limit the recoverable expenses under section 1202.4, subdivision (f)(3). Similarly, section 1202.4, subdivision (f)(3)(J) does not expressly limit residential security expenses only to cases involving violent felony or domestic violence. It merely states that such expenses are recoverable in those situations. When section 1202.4, subdivision (f)(3) is read in conjunction with section 1202.4, subdivision (f)(3)(J), the clear language authorizes the trial court, in its discretion, to award residential security expenses where the victim incurred the expenses as a result of the defendant's criminal conduct. That is what occurred here.

The 2018 amendment of section 1202.4, subdivision (f)(3)(J), which added domestic violence as a crime for which residential security expenses were recoverable, does not indicate that the Legislature intended to limit residential security expenses only to cases involving a violent felony or domestic violence. Our interpretation already incorporated the 2018 amendment. More importantly, the Legislature did not amend the statute to expressly limit recovery of residential security expenses. For example, the Legislature did not amend the statute to provide that "Expenses to install or increase residential security incurred related *only* to a violation of Section 273.5, or a violent felony as defined in subdivision (c) of Section 667.5 . . . ." The legislative analysis indicates the Legislature was concerned that the California Supreme Court might restrict the broad discretion in section 1202.4, subdivision (f)(3), and thus suggests the amendment to section 1202.4, subdivision (f)(3)(J) was intended to safeguard a domestic violence victim's right to restitution for residential security expenses regardless of the

9

Supreme Court's decision, if any. The legislative analysis, however, does not suggest the Legislature had any opinion on whether the broad discretion in section 1202.4, subdivision (f)(3) permits a trial court to award residential security expenses as part of victim restitution in cases involving other criminal conduct. In sum, the 2018 amendment to section 1202.4, subdivision (f)(3)(J) does not support Carter's interpretation that residential security expense are limited only to those cases involving crimes listed in section 1202.4, subdivision (f)(3)(J).

Carter contends that our interpretation implies there are no limits on the permissible subjects for restitution.  Not so. A victim must incur an "economic loss" and the loss must be incurred as a result of the defendant's criminal conduct. Moreover, any loss that falls within one of the enumerated provisions must comply with any requirements set forth in that provision. Although section 1202.4, subdivision (f)(3)(J) does not impose any requirements for recovering residential security expenses, other provisions do impose requirements for recovering expenses. For example, under section 1202.4, subdivision (f)(3)(G), victim restitution includes "Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court." Thus, any award of interest as part of victim restitution would be limited to an annual rate of 10 percent, and the trial court would determine the accrual date.

Likewise, "[e]xpenses incurred by an adult victim in relocating away from the defendant" is recoverable, but the relocation expenses must be verified "by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim." (§ 1202.4, subd. (f)(3)(I).) However, relocation expenses for other reasons are not "subject to section 1202.4(f)(3)(I

10

and its verification requirement. If section 1202.4(f)(3)(I) is inapplicable because the relocation was for reasons not covered by that provision, restitution may still be authorized if the more general provisions of subdivision (f) of section 1202.4 are met." (*People v. Baudoin* (2022) 85 Cal.App.5th 1184, 1195.)

Carter argues that it would be incongruous for the Legislature to provide in section 1202.4, subdivision (f)(3)(F) that noneconomic losses would include, but not be limited to, psychological harm for certain felony violations if the broad language in section 1202.4, subdivision (f)(3) already encompassed noneconomic losses. We disagreed that our interpretation would render the phrase "including, but not limited to" in section 1202.4, subdivision (f)(3)(F) superfluous. Section 1202.4, subdivision (f)(3) only addresses a victim's "economic loss." Section 1202.4, subdivision (f)(3)(F) expanded "economic loss" to include "[n]oneconomic loss," and thus, the second "including, not limited to," language in that provision was necessary to define the scope of "[n]oneconomic loss."

Finally, to the extent that the statutory language is ambiguous and Carter's interpretation is a permissible reasonable interpretation, we conclude the restitution directive of the Victims' Bill of Rights (Cal. Const., art. I, §28, sub. (b)(13)) and the Legislature's express intent in section 1202.4, subdivision (a) support our interpretation that residential security expenses were authorized in this case under the broad language of section 1202.4, subdivision (f)(3). The victim incurred the expenses to provide greater security of the very residence that Carter vandalized. Carter's interpretation would deny the victim his constitutional restitution rights. In sum, the trial court was authorized to award residential security expenses here.

11

## IV.

### AMOUNT OF RESTITUTION AWARD

Carter argues the trial court erred in awarding restitution for security services to which the victim already was subscribed. The Attorney General, however, contends that because the victim added multiple security cameras, the subscription plan was required to support the increased number of security cameras. In reply, Carter argues the evidence did not support the Attorney General's claim. He notes the service plan covered the time period of September 24, 2021 through September 24, 2022, but argues the submitted documentation showed the cameras were purchased on August 25, 2022.

We review restitution orders for an abuse of discretion. (*People v. Valle* (2023) 93 Cal.App.5th 1329, 1332.) Although the submitted documentation of the camera purchase shows an August 25, 2022 date for a "Sales Audit- Transaction Detail," the document shows the "Sales Date" as "8/22/21."[3] Thus, the evidence supports the trial court's implied finding the victim purchased the additional cameras on August 22, 2021, before purchasing or renewing the subscription plan. The court did not abuse its discretion in determining the subscription expense was incurred as a result of Carter's criminal conduct.

Carter also argues the trial court abused its discretion in awarding the victim $249.99 for purchasing new security cameras, which he contends failed to account for a $232.60 rebate. Carter concedes trial counsel failed to object on this ground, but argues his claim is reviewable as a legal matter. Alternatively, he argues trial counsel was ineffective for failing to

---

[3] The document appears to be an August 25, 2022 printout of the details of the August 22, 2021 receipt from the store's internal accounting system.

12

object. We conclude Carter has not shown the rebate applied to the price of the security cameras. The submitted receipt showed the victim purchased multiple items. Although certain items showed a price reduction, the security cameras did not have any price adjustment. At the bottom, the receipt shows a "CITI Rebat[e]" in the amount of $232.60, followed by a "VISA" amount showing the victim paid $159.27. From this receipt, Carter has not shown that the only reasonable inference was the "CITI rebate" applied to the security cameras specifically. For example, it would be reasonable to infer the "CITI Rebat[e]" was a cash rebate or reward for using a CITI-branded Visa card, and this "rebate" could be used for any purchase. It would be contrary to the victim's constitutional restitution rights to penalize the victim for using the rebate to purchase the security cameras when the victim could have used the rebate to purchase other items. In sum, Carter has not shown an abuse of discretion in awarding the $249.99 amount for the purchase of security cameras.

## DISPOSITION

The restitution order is affirmed.


DELANEY, J.


WE CONCUR:


O'LEARY, P.J.


MOORE, J.

13