Filed 12/6/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B317130 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA479343) |
| v. | |
| TERRY CHRISTOPHER BAUDOIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge. Reversed.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Terry Christopher Baudoin appeals a restitution order imposed in connection with his conviction for battery with serious bodily injury. The trial court ordered defendant to pay restitution to the victim, L.W.,[1] including for various expenses she incurred in relocating away from her home where the assault took place. Penal Code[2] section 1202.4, subdivision (f)(3)(I) (section 1202.4(f)(3)(I)) requires a trial court to include "[e]xpenses incurred by an adult victim in relocating away from the defendant" in a direct restitution award, but only if the expenses have been "verified by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim." Defendant argues the restitution order here violates section 1202.4(f)(3)(I) because there was no verification by law enforcement or a mental health treatment provider supporting the necessity of L.W.'s relocation costs. We agree, and reverse and remand for further proceedings, including affording the People an opportunity to provide the required verification.

---

[1] Following the guidance of California Rules of Court, rule 8.90(b)(4), we refer to the victim by her initials only.

[2] All further statutory references are to the Penal Code unless otherwise noted.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Assault on L.W.[3]

On March 6, 2019, L.W. had an argument with her husband at his workplace. Defendant, who was a good friend of L.W.'s husband, was present during the argument.

After the argument, L.W. returned to the home she shared with her husband and her two children, who were four and six years old. Arriving home, the doorbell rang. When she opened the door, defendant's sister, Tiana Baudoin (Tiana),[4] rushed at L.W. and began beating her about the face and head. Repeatedly struck, L.W. fell to the floor. Defendant, who was present with his sister, directed Tiana to let L.W. stand up, but Tiana continued beating her. Defendant then joined in. He "sucker punched" L.W. in the face. She fell on her back and lost consciousness.

As a result of the beating, L.W. was taken by ambulance to the hospital, where she remained for approximately 24 hours. She suffered fractures to both eye sockets, and required approximately 14 stitches under one of her eyes.

### B. Defendant Pleads Nolo Contendere and Is Sentenced to Prison

By an amended information, defendant was charged with battery with serious bodily injury (§ 243, subd. (d)), assault by

---

[3] Because this matter is on appeal from a negotiated plea, the facts of the case are taken from the preliminary hearing and the restitution hearings, which form the basis for the appeal.

[4] Because Tiana shares the same last name as defendant, we refer to her by her first name for purposes of clarity and not out of any disrespect.

means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), and first degree burglary (§ 459).  Defendant entered a plea of nolo contendere to battery with serious bodily injury and admitted inflicting great bodily injury on the victim.[5]  He also admitted a probation violation from a prior case.  The court sentenced defendant to an upper term of four years in state prison to be served concurrently with the term for violating probation.  The court dismissed the remaining counts, and put the matter over for a further hearing regarding victim restitution.

## C.    Restitution Overview

Before we discuss the restitution related proceedings in the trial court, an overview of certain restitution provisions applicable to this case is helpful.

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights. . . .  [Citations.]  Proposition 8 established the right of crime victims to receive restitution directly 'from the persons convicted of the crimes for losses they suffer.' (Cal. Const., art. I, § 28, subd. (b).)  The initiative added article I, section 28, subdivision (b) to the California Constitution . . . ." (*People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*).)

Under this constitutional provision, "[r]estitution shall be ordered . . . in every case . . . in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(B).)  "California Constitution, article I, section 28, subdivision (b), which is not

---

[5] Tiana was also charged, and entered a plea of nolo contendere to one count of assault by means of force likely to produce great bodily injury.

self-executing, directed the Legislature to adopt implementing legislation. [Citations.]" (*Giordano*, *supra*, 42 Cal.4th at p. 652.)

The Legislature enacted section 1202.4 to "implement[ ] the broad mandate of California Constitution, article I, section 28, subdivision (b)." (*Giordano*, *supra*, 42 Cal.4th at pp. 656.) Subdivision (f) of section 1202.4 provides, with exceptions not relevant here, that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) It further provides that "[t]he court shall order full restitution." (*Ibid.*)

Subdivision (f)(1) of section 1202.4 provides that a "defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1).) "The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt." (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.)

Subdivision (f)(3) of section 1202.4 provides, in relevant part, that the restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following . . . ." (§ 1202.4, subd. (f)(3).) What follows are 12 subdivisions, (f)(3)(A) through (f)(3)(L), which address specific types of expenses. Among these subdivisions is (f)(3)(I), which addresses "[e]xpenses incurred by an adult victim in relocating away from the defendant." Section 1202.4(f)(3)(I) requires that "[e]xpenses incurred pursuant to this section shall be verified by

5

law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim."

## D.     The Restitution Hearings and Resulting Order

On November 9, 2021, the trial court held a hearing pursuant to section 1202.4, subdivision (f)(1) to consider restitution payable to L.W. by both defendant and Tiana.

L.W. testified at the hearing as follows.  After the assault, she was taken to the hospital by ambulance, and she later received a bill in the amount of $1,642, which was still unpaid.  After she was released from the hospital, she did not return to her home because defendant and Tiana knew where she lived, and she was afraid of them assaulting her again or something else happening to her.  L.W. further testified, "My husband— when the incident happened, I called him and told him what happened.  He never answered.  He never said come home.  He never said—he never checked on me and the kids at all.  It's as if he knew that it happened, and he never reached out to say, 'Okay.  Come back home.  It's okay.  You know, it was a mistake.' He never reached out.  So basically, I got beat up by his friends and put out my house with my two young kids."  Defendant and Tiana were gang-affiliated and members of the gang would gather at the residence where L.W. lived with her husband.

Faced with this situation, L.W. took her two children to the one-bedroom apartment of her father, where she was able to stay for a night.  After that, she moved from place to place, including different motels and friends' residences, because she was not able to afford a more permanent residence.  L.W. stayed in motels for about six to eight months, and she provided receipts totaling $8,055.56; she was missing some receipts, so the actual expense

was higher.  L.W. shared the motel rooms with a relative and each paid half of the expenses.  In February 2020, L.W. was able to get into an apartment for $1,800 per month in rent; L.W. also shared the apartment with the same relative, and they each paid half of the rent.  When L.W. had lived with her husband, she had paid no rent, and she was not on the lease.  L.W. and her relative also had to pay a total of $3,600 for a security deposit and last month's rent; the relative paid the "majority of it" but L.W. agreed to pay her back.

At the conclusion of L.W.'s testimony, the prosecutor argued that L.W. should receive $1,642 for the ambulance charge, $9,000 for L.W.'s share of the hotel expenses (calculated at $50 per day for 180 days), and $900 for L.W.'s share of the security deposit, for a total of $11,542.  Defense counsel pointed out that L.W. admitted she had assumed, near the end of her period of staying in motels, that she would be returning home, and counsel argued that this admission showed L.W. did not fear returning home and was not entitled to restitution of relocation expenses under section 1202.4(f)(3)(I).

Defense counsel also argued there was no verification from law enforcement that it was necessary for L.W. to move, and that such evidence was required by section 1202.4(f)(3)(I).  In making this argument, counsel cited *People v. Mearns* (2002) 97 Cal.App.4th 493 (*Mearns*), which counsel contended held that a verification by law enforcement was required to award relocation expenses under section 1202.4(f)(3)(I).  The prosecutor responded the victim's testimony alone was sufficient to award relocation expenses, and no verification by law enforcement was required.

The trial court held a second hearing regarding restitution on November 22, 2021.  The court found defendant was gang

7

affiliated, was a friend of L.W.'s husband, and was often at the home of L.W. and her husband. Because of these facts, L.W. did not feel safe returning home after the attack and did not do so because she was in fear for her life. She also did not return home because she was unsure if her husband was involved in the attack. Responding to defense counsel's argument based on *Mearns*, the court stated that it read *Mearns* to hold restitution for relocation expenses was proper under the general introductory provisions of section 1202.4, subdivision (f), in addition to the more specific provisions of section 1202.4(f)(3)(I), thus obviating any need for a verification. (See *Mearns*, *supra*, 97 Cal.App.4th at p. 503.)

At the conclusion of the hearing, the court ordered defendant to pay restitution consisting of:

(1) $1,642 in ambulance expenses.

(2) Relocation expenses of 50 percent for six months of motel expenses, limited because L.W. shared costs with her relative. Because the relocation expense receipts submitted to the court varied in amounts (some were in excess of $100 a day while others were for less) the court selected $100 a day as the reasonable expense, and awarded L.W. 50 percent of the motel charges for 180 days, for a total of $9,000.

(3) $900 for L.W.'s share of the first and last month's rent on a new apartment and $900 for her share of the security deposit.

The total restitution awarded to L.W. was $12,442. Defendant and Tiana were ordered jointly and severally liable for the restitution.

8

On December 13, 2021, defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court's order of restitution for relocation expenses violated section 1202.4(f)(3)(I) because there was no verification by law enforcement that those expenses were necessary for the personal safety of the victim, or from a mental health treatment provider that the expenses were necessary for the emotional well-being of the victim.[6] Relying on *Mearns*, the People argue victim relocation costs can be awarded without reference to section 1202.4(f)(3)(I) and its verification requirement so long as those expenses constitute an economic loss under the general language of the first sentence of section 1202.4, subdivision (f).

## A.    Standard of Review

"A victim's restitution right is to be broadly and liberally construed.  [Citations.]"  (*Mearns, supra*, 97 Cal.App.4th at pp. 500-501.)  We review a restitution order for abuse of discretion.  (*Giordano, supra*, 42 Cal.4th at p. 663; *People v. Ortiz* (1997) 53 Cal.App.4th 791, 800.)  The abuse of discretion standard " 'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [(*People v. Williams* (1998) 17 Cal.4th 148, 162.)]  Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed

---

[6] Defendant does not dispute the portion of the restitution order for $1,642 in ambulance expenses.

to determine the surviving victim's economic loss." (*Giordano*, *supra*, at pp. 663-664.)

In reviewing restitution orders, we do not reweigh the evidence or make credibility decisions. Our review is to determine whether there is sufficient evidence to support the inferences made by the trial court. (*People v. Sy* (2014) 223 Cal.App.4th 44, 63; *People v. Baker* (2005) 126 Cal.App.4th 463, 469.) "However, a restitution order 'resting upon a " 'demonstrable error of law' " constitutes an abuse of the court's discretion. [Citation.]' [Citation.]" (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; see *People v. Williams* (2010) 184 Cal.App.4th 142, 146 ["when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal"].)

## B.  Section 1202.4(f)(3)(I) Applies to the Trial Court's Restitution Order

By its own terms, section 1202.4(f)(3)(I)'s verification requirement applies when an adult victim incurs expenses to relocate away from a defendant. On appeal, defendant does not contest that L.W. relocated to get away from him. L.W. testified that she did not want to go back to her apartment where the assault happened because defendant and Tania knew where she lived, and she was still afraid of them. The trial court credited this testimony, noting defendant was gang affiliated, was a friend of L.W.'s husband, and was always at the home of L.W. and her husband. Because of these facts, the trial court found L.W. did not feel safe returning home after the attack and did not do so because she was in fear for her life.

The People likewise do not contend the relocation was for some reason other than to get away from defendant. Nor does

10

the record indicate any reason that L.W. would have incurred relocation costs as a result of defendant's conduct other than to move away from defendant. To the extent L.W. also moved to get away from her husband, the evidence showed the husband was a friend of defendant and always let defendant into L.W.'s home, the assault happened shortly after an argument with her husband at which defendant was present, and her husband did not speak to her after the assault. It was therefore understandable why L.W. did not feel safe from defendant staying in her current home and needed to relocate away from defendant. Defendant knew where L.W. lived and she reasonably feared her husband, who also lived there, would continue to provide defendant access to the apartment and thus to L.W. if she still resided there.

Given that there is no dispute the relocation costs at issue were incurred by L.W. to move away from defendant, section 1202.4(f)(3)(I) and its verification requirement are squarely applicable. The People rely on *Mearns* and its interpretation of section 1202.4 to argue that, so long as relocation costs are economic losses under the first sentence of section 1202.4, subdivision (f), those costs can be awarded without reference to section 1202.4(f)(3)(I). While an alternative holding in *Mearns* suggests section 1202.4 can be so interpreted, we find such a reading of the statutory language untenable.

To help frame the discussion in *Mearns*, we begin by restating the pertinent statutory language. The first sentence in section 1202.4, subdivision (f) states in relevant part that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount

11

established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Subdivision (f)(3) then states that the restitution order "shall identify . . . each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to" before listing examples of types of covered losses in subdivisions (f)(3)(A) through (f)(3)(L), including relocation costs in subdivision (f)(3)(I).

While subdivisions (f)(3)(A) through (f)(3)(L) of section 1202.4 list specific types of expenses that a court must include in a restitution award if they were incurred as a result of the defendant's criminal conduct, the list is non-exclusive, as demonstrated by the introductory phrase "including, but not limited to" in subdivision (f)(3). (See *People v. Henderson* (2018) 20 Cal.App.5th 467, 471 ["Section 1202.4, subdivision (f)(3) expressly states that the enumerated list . . . is a *nonexclusive* list of examples"]; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046 ["Because [§ 1202.4, subd. (f)(3)] uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute"].)

Thus, even if a type of expense is not included in subdivisions (f)(3)(A) through (f)(3)(L), if it is an "economic loss" resulting from the defendant's crime then it is proper to include it in a restitution order. (*Mearns, supra*, 97 Cal.App.4th at p. 503; see *People v. Brooks* (2018) 23 Cal.App.5th 932, 947; *People v. Henderson, supra*, 20 Cal.App.5th at p. 470.) The authority to impose restitution for categories of economic loss caused by a

12

defendant that are *not* listed as an example in the subparts of section 1202.4, subdivision (f)(3), however, does not in our view excuse compliance with any requirements applicable to an example that *is* listed.

In *Mearns*, the defendant raped the victim in her mobile home. After the rape, the victim sold her mobile home for $13,000 and purchased a new one for $26,575. The victim testified that she sold her mobile home because she wanted to leave her residence as a result of the rape, and bought a similar sized mobile home in a gated community for additional protection. A law enforcement investigator submitted a letter in connection with the restitution hearing stating the mobile home that was sold was incapable of being secured from intruders because of its shoddy construction, and that the victim was in constant fear of being assaulted again. The trial court imposed restitution of $13,575, representing the difference between the sale price of the original mobile home and the purchase price of the new mobile home. (*Mearns*, *supra*, 97 Cal.App.4th at p. 497.)

On appeal, the court found the award satisfied section 1202.4(f)(3)(I)'s requirements. There was a sufficient factual basis showing the victim's move involved relocating away from the defendant because the defendant knew where the victim lived and where her son attended school, and she was in constant fear of being assaulted again. (*Mearns*, *supra*, 97 Cal.App.4th at p. 502.) There was no dispute that the letter from law enforcement complied with the verification requirement in section 1202.4(f)(3)(I), as the letter explained why the relocation expenses were necessary for the personal safety of the victim. (*Mearns*, *supra*, at pp. 497, 502-503.) Finally, *Mearns* found the trial court's analysis of why the relocation expenses were

incurred as a result of the defendant's conduct "rational, well reasoned, based on factual evidence presented at the hearing, and within its broad discretion."  (*Id*. at p. 502.)

We take no issue with that portion of *Mearns*'s analysis. But the *Mearns* court then went on to hold, in the alternative, that the court's restitution order was also authorized under the first sentence of section 1202.4, subdivision (f) regardless of the specific wording in section 1202.4(f)(3)(I).  In its view, "putting aside the specific wording in section 1202.4, subdivision (f)(3)(I), the trial court reasonably could have concluded that the increased costs incurred in the move was an 'economic loss' within the general language of the first sentence of section 1202.4, subdivision (f).  [The victim] moved in order to prevent [the] defendant from finding her again and reduce the fears engendered by the very mobilehome where she was sexually assaulted at knife point.  The trial court could reasonably conclude that the enormous emotional trauma resulting from the attack was such that [the victim] virtually had to move and this was an 'economic loss' resulting from [the] defendant's conduct without relying on the more specific language in section [1202.4(f)(3)(I)]."  (*Mearns*, *supra*, 97 Cal.App.4th at p. 503.)

This alternative holding led the trial court here to conclude that restitution for L.W.'s relocation expenses was proper under the general provisions of section 1202.4, subdivision (f), which obviated any need for a verification under the more specific provisions of section 1202.4(f)(3)(I) even if L.W.'s moving costs were incurred to relocate away from defendant.  To the extent the alternative holding in *Mearns* says this, we do not agree with it.

It is important to begin by noting that the alternative holding in *Mearns* was made on the assumption that the victim

14

"did *not* move in order to relocate away from [the defendant]." (*Mearns, supra*, 97 Cal.App.4th at p. 502, italics added.) *Mearns* correctly states that if section 1202.4(f)(3)(I) is inapplicable because the relocation was not to get away from the defendant, restitution may still be authorized if the more general provisions of subdivision (f) of section 1202.4 are met. Where the alternative holding *Mearns* erred, in our view, is stating that when a victim "moved in order to prevent [the] defendant from finding her again," victim relocation costs can be subject to "the general language of the first sentence of section 1202.4, subdivision (f)" without being subject to "the specific wording in section [1202.4(f)(3)(I)]." (*Mearns, supra*, at p. 503.) A victim moving to prevent the defendant from finding the victim again and a victim moving to relocate away from the defendant are not distinct; they are two ways of saying the same thing. Indeed, elsewhere in *Mearns* the court acknowledged the equivalency, concluding the facts showed the victim there relocated away from the defendant because the defendant "knew where [the victim] lived" and "[o]nce she moved, [the] defendant had no knowledge of her whereabouts." (*Id.* at pp. 502-503.)

Because relocating away from the defendant and relocating to prevent a defendant from finding the victim again are two ways of saying the same thing, section 1202.4(f)(3)(I) applies regardless of which descriptor is used. To read the first sentence of section 1202.4, subdivision (f) as permitting imposition of moving related costs for relocating away from the defendant (including to prevent the defendant from finding the victim again) without giving force to the verification requirement set forth in section 1202.4(f)(3)(I) renders section 1202.4(f)(3)(I) surplusage and a nullity. Section 1202.4, like any statute, must

15

be construed as a whole. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107.) "It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage. [Citations.] 'An interpretation that renders statutory language a nullity is obviously to be avoided.' [Citation.]" (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1038-1039; see also *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715-716 [judicial construction that renders part of a statute meaningless or inoperative is generally precluded].) Section 1202.4(f)(3)(I) is undoubtedly an example of expenses subject to restitution, but when the facts fit the example set forth in section 1202.4(f)(3)(I) compliance with its terms is required. That did not occur here, and the failure to comply with this statutory requirement mandates reversal.

We wish to emphasize the limited nature of our holding here today so as to not chill the pursuit of restitution where appropriate. First, we do not hold that all potential relocation costs are subject to section 1202.4(f)(3)(I) and its verification requirement. If section 1202.4(f)(3)(I) is inapplicable because the relocation was for reasons not covered by that provision, restitution may still be authorized if the more general provisions of subdivision (f) of section 1202.4 are met.

Second, as shown by *Mearns* itself, when moving expenses are incurred to relocate away from a defendant, the verification requirement serves simply to confirm the necessity of those expenses and should not limit an order of restitution for any expenses the court finds demonstrably necessary. Law

16

enforcement provided the required verification in *Mearns*, and relocation costs were properly included in the restitution order there as the requirements of section 1202.4(f)(3)(I) were met. Given concerns with whether relocation (which often involves considerable cost) is always necessary in every case to get away from a defendant either for personal safety or for emotional well-being, the Legislature imposed a requirement on law enforcement and/or mental health treatment providers to verify the relocation expenses sought. The verification requirement applies not only to direct restitution payable by the defendant, but also to requests for restitution from the California Victim Compensation Board for relocation expenses. (See Gov. Code, § 13957, subd. (a)(7)(A).) Requiring compliance with that statutory mandate prevents abusive or improper requests (*People v. Brooks*, *supra*, 23 Cal.App.5th at p. 944), but it does not interfere with a restitution order fully reimbursing a victim for every determined economic loss incurred as a result of the defendant's conduct.

## C.     Remand for Further Proceedings is Appropriate

Defendant argues without citation to authority that this court should strike the relocation costs from the restitution award without any further proceedings. The People argue we should remand for a new restitution hearing as to the relocation expenses. We agree that remand for a new restitution hearing (including affording the People an opportunity to provide the necessary verification) is appropriate. (See *People v. Harvest* (2000) 84 Cal.App.4th 641, 650 [restitution award made at resentencing does not implicate double jeopardy]; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 996 [remanding for rehearing following reversal of restitution award].)

17

## DISPOSITION

The order of restitution is reversed insofar as it included relocation expenses, and the matter remanded for further proceedings consistent with this opinion.

CERTIFIED FOR PUBLICATION


                                        WEINGART, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.